**MONROE GUARANTY INSURANCE COMPANY, Appellant–Plaintiff Below,**

v.

**Jesse J. CAMPOS, Appellee– Defendant Below.**

**No. 92A03–9105–CV–145.**

Court of Appeals of Indiana, Third District.

Dec. 16, 1991.

Julie L. Michaelis, Wooden McLaughlin & Sterner, Indianapolis, for appellant-plaintiff below.

Richard E. Beers, Beers, Mallers, Backs & Salin, Fort Wayne, for appellee-defendant below.

STATON, Judge.

Monroe Guaranty Insurance Company ("Monroe") appeals a grant of summary judgment in favor of Jesse Campos. Monroe presents us with the sole issue of whether the trial court erred in deciding as a matter of law that Campos was "using" the insured tow truck when he was struck by an uninsured driver.

We affirm.

The facts of the instant case are not in dispute. Monroe issued a Commercial Auto Policy to BLT Towing, Inc. d/b/a Allen County Towing with a policy period from February 17, 1989 to February 17, 1990 ("policy"). On February 17, 1989, at approximately 2:00 a.m., Campos was dispatched by Allen County Towing to the intersection of Clinton and South Calhoun Streets in Fort Wayne, Indiana.

Campos pulled his tow truck into a parking lot and exited to confer with Fort Wayne Police Officer George Peppas concerning towing of a semi tractor-trailer facing north on the southbound lane of Clinton Street. Officer Peppas informed Campos that he was awaiting the results of a breathalyzer test that had been administered to the driver and directed Campos to wait in the back seat of the police vehicle.

Campos returned to the tow truck briefly to answer a page from Allen County Towing. Shortly thereafter, Officer Peppas received information that the semi tractor-trailer driver had been arrested and requested that Campos remove the semi tractor-trailer from Clinton Street. Campos expressed his intention to proceed to the tractor-trailer and determine how it could safely be removed from the roadway. As Campos was exiting the police vehicle, he was struck and severely injured by a vehicle driven by an uninsured motorist.

On February 9, 1990, Monroe commenced a declaratory judgment action concerning its potential duty to indemnify Campos for his damages under the uninsured motorist coverage of the policy. On September 24, 1990, Monroe filed a Motion for Summary Judgment arguing that Campos was neither occupying or using the insured tow truck at the time of the accident and was thus not entitled to coverage under the policy. On December 10, 1990, Campos filed a Motion for Summary Judgment.

Argument was heard on the Motions for Summary Judgment, and on January 29, 1991, the trial court entered judgment as follows:

This cause having been taken under advisement, the Court now finds the following undisputed facts:

1. At all relevant times, Plaintiff provided general automobile liability coverage and uninsured motorist coverage pursuant to an endorsement thereon to Defendant's employer on said employer's tow trucks.

2. The uninsured/under insured endorsement to the Plaintiff's policy at issue in force at all relevant times provided in pertinent part that:

'We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from garage operations.'

Who is an insured?:

A. The following are 'insured' for 'covered autos':

(1) You.

(2) Anyone else while using with your permission a 'covered auto' you own, hire or borrow.

3. Uninsured/under insured motorist coverage—'our promise'—we will pay all sums the 'insured' is legally entitled to recover as damages from the owner or driver of:

A. An 'uninsured motor vehicle' or an 'under-insured motor vehicle' because of 'bodily injury' sustained by the 'insured' and caused by an 'accident.'

4. Within the scope of his employment, and while operating one of his employer's tow trucks insured by Plaintiff as set forth above, the Defendant was called to the intersection of Calhoun and Clinton in Fort Wayne, Indiana, on February 27, 1989.

5. At the scene, the Defendant communicated with a Fort Wayne police officer and was advised that the driver of a semi tractor-trailer had been operating that vehicle the wrong way on Clinton and had been taken to the Fort Wayne Police Department for a breath test for intoxication. The officer advised the Defendant to wait in his car until the test results were known.

6. A short time later, the Defendant received a page and returned to his tow truck which he had parked off the road a short distance away from the police car and the semi tractor-trailer.

7. That after communicating with his dispatcher, the Defendant returned to the police car and within a few minutes was advised that the driver of the semi tractor-trailer had been arrested for operating while intoxicated. The Fort Wayne Police Officer then asked the Defendant to remove the semi tractor-trail-

er from its location. The Defendant then exited the Fort Wayne police car, and was headed toward the semi tractor-trailer to determine what steps needed to be taken to tow the vehicle when he was struck by an insured [sic] motorist, injuring him.

8. Plaintiff issued its policy of liability and uninsured/under insured motorist coverage to Defendant's employer on February 17, 1989, at 12:01 a.m. and was in full and effect [sic] at the time the Defendant was injured.

Based on said undisputed facts, the Court concludes as a matter of law that:

1. Indiana has no applicable interpretative case law concerning whether the *operator* of a motor vehicle may, as a matter of law, 'use' that motor vehicle while not an occupant or in direct physical contact with that vehicle.

2. Under the facts and circumstances in the case at bar, the Defendant was engaged in an activity essential to the towing process and thus, Defendant was using the tow truck insured by Plaintiff as its *operator* at the time Defendant was injured by an uninsured motorist. See e.g., *Rau vs. Liberty Mutual Insurance Company* (1978), 21 Wash.App. 326, 585 Pac.2d 157. See also *Stevens vs. U.S.F. & G.* (1977), Miss.App. 345 So.2d 1041; *Hartford Accident & Indemnity Company vs. Booker* (1976), 140 Ga.App. 3, 230 S.E.2d 70; *Oberkramer vs. Reliance Insurance Company* (1983) Mo.App., 650 S.W.2d 300; *National Union Fire Insurance Company of Pittsburgh, Pennsylvania vs. Olson* (1988), Hawaii, 751 P.2d 666; and *Great American Insurance Company vs. Cassell* (1990) Virginia Supreme Court [239 Va. 421], 389 S.E.2d 476.

3. As a person using the tow truck with the permission of his employer, Defendant was therefore an insured under the liability portion of Defendant's policy at issue and in force at all relevant times as set forth above.

4. The policy at issue and in force at all relevant times is governed by the 1982 version of Indiana's current unin-

sured/under insured motorist insurance coverage statute, I.C. 27–7–5–2 which, at the time the policy was issued, provided in pertinent part that:

'(a) each automobile liability or motor vehicle liability policy of insurance which delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state, insuring against loss resulting from liability imposed by law for bodily injury or death suffered *by any person* and for injury or destruction of property to others *arising from the* ownership, maintenance, or *use of a motor vehicle, must provide coverage,* either in the policy or in a supplement to it:

(1) in limits for bodily injury or death and for injury to or destruction of property set forth in I.C. 9–2–1–15 under policy provisions approved by the Commissioner of Insurance, *for the protection of persons insured thereunder* who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, and for injury to or destruction of property resulting therefrom; or

(2) in limits for bodily injury or death set forth in I.C. 9–2–1–15 under policy provisions approved by the Commissioner of Insurance, for the protection of persons insured *under the policy provisions* or legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom.'

5. The well-established purpose of this statute '... is to afford the same protection to a person injured by the uninsured motorist as he would have enjoyed if the offending motorist had himself carried liability insurance.' *Scalf vs. Globe American Casualty Insurance Co.* (1982), Ind.App., 442 N.E.2d 8 at 10, *Bocek vs. Inter–Insurance Exchange of Chicago Motor Club* (1977), 175 Ind.App. 69, 369 N.E.2d 1093.

6. As set forth in the emphasized portions of the applicable statute, Indiana's uninsured motorist statute requires that all carriers such as Defendant herein provide uninsured motorist coverage to all persons who would otherwise qualify as insureds under the liability portion of the underlying policy. *Anderson vs. State Farm Mutual Automobile Insurance Co.* (1984), Ind.App., 471 N.E.2d 1170 at 1175.

7. 'It has repeatedly been held that any language in an insurance contract which dilutes or diminishes the protection required by the uninsured motorist statute is contrary to public policy ...' and therefore void. *Ibid,* at 1174 and the cases cited therein.

8. As an insured under the liability portion of the policy at issue and in force at all relevant times, Defendant is also entitled to coverage under the uninsured motorist endorsement to that policy, despite language in that endorsement purporting to limit coverage to an occupant (and excepting from coverage injuries covered by workmen's compensation.)

The Court now, therefore, finds that Defendant is entitled to judgment as a matter of law [against the plaintiff] as to liability for indemnity under the policy. Defendant's Motion for Summary Judgment is now, therefore, granted; and Plaintiff's Motion for Summary Judgment is now, therefore, denied. It is: [ordered and adjudged] that Defendant have judgment against Plaintiff as to liability for indemnity under the policy.

Record, pp. 170–73.

Monroe subsequently filed a Motion for Clarification of Judgment and a Request for Ruling on Motion to Strike. The trial court amended the last paragraph of its judgment of January 29, 1991 to read as follows:

The Court now, therefore, finds that Defendant is entitled to judgment as a matter of law against the Plaintiff as to liability for indemnity under the policy. Defendant's Motion for Summary Judgment is now, therefore, granted; and Plaintiff's Motion for Summary Judgment is now, therefore, denied. IT IS, THEREFORE, ORDERED AND ADJUDGED that Defendant have judgment

against Plaintiff as to liability for indemnity under the policy.

Record, p. 179.

The trial court granted Monroe's request to strike paragraph seven of Thomas Johnson's affidavit[1] and advised counsel that the paragraph "played no part in the Court's decision to sustain defendant's motion for summary judgment." Record, p. 179.

On an appeal from a summary judgment, we will reverse only where the record reveals a genuine issue of material fact or the trial court incorrectly applied the law. Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the non-moving party. *Mauller v. City of Columbus* (1990), Ind.App., 552 N.E.2d 500, 502, *trans. denied.* Summary judgment will be affirmed if it is sustainable upon any theory or basis supported by the record. *Howard v. H.J. Ricks Const. Co., Inc.* (1987), Ind.App., 509 N.E.2d 201, 204, *reh. denied, trans. denied.*

The record herein reveals no issue of material fact. Moreover, Campos is clearly an "insured" under the policy which contains an "omnibus clause" extending insurance coverage to a person using the insured vehicle with the policyholder's permission. The uncontroverted affidavit of Thomas Johnson, the general manager of Allen Towing, discloses that Campos was using the tow truck with the policyholder's permission. Thus, the case turns upon whether Campos was "using" the tow truck *at the time* of the accident.

Monroe relies upon *Miller v. Loman* (1987), Ind.App., 518 N.E.2d 486, *reh. denied,* wherein the court considered whether a passenger was "using" a vehicle when he kicked the vehicle's muffler from the roadside. The *Miller* court stated:

> We must first note that Miller was not using the car under the insurance contract as interpreted in the light of Indiana precedent. Under Indiana law, 'use' of a vehicle means actively [sic]

'that assists in propelling or directing a vehicle to a place where it ceases to be employed.' *Protective Insurance Co. v. Coca–Cola Bottling Co.*.(1984), Ind.App., 467 N.E.2d 786, 790. Even while he was still in the truck, Miller did not engage in this kind of activity. He certainly did not engage in such activity when he was thirty feet from the truck.

*Id.* at 492.

Campos replies that the reasoning of *Miller* applies only to those who occupy rather than control a vehicle (i.e., passengers). He contends that an individual who "uses" a vehicle by propelling it may also "use" the vehicle in a manner related to the primary use. He argues that insurance coverage should extend to those uses within the contemplation of the parties to the insurance contract.

The distinction between those having an active relationship with an insured vehicle and those having a passive relationship with an insured vehicle was recognized in *Protective Insurance, supra.* The *Protective* court considered whether a bottling company "used" a vehicle by directing its location during unloading and concluded that the bottling company did not actively "use" the insured vehicle in a manner entitling the bottling company to coverage as an additional insured.

After noting that the word "use" could mean "enjoy, hold, occupy or have in some manner the benefit thereof" (citing *Bryson v. Hicks* (1922), 78 Ind.App. 111, 113, 134 N.E. 874, 875) the court stated: "The better reasoned cases interpreting 'use' as that word appears in an omnibus clause in a truckman's liability policy deny coverage unless the potential insured exercises direct control over the vehicle." *Protective Insurance, supra,* at 788–89. The court stated that the term "use" appearing in the omnibus clause at issue suggested "activity that assists in propelling or directing the vehicle to a place where it ceases to be employed." *Id.* at 790. The court then concluded:

> insured while engaged in the towing process.

---

1. Paragraph 7 contained an averment that Johnson was "led to believe" his employees were

... the words 'use', 'user', and 'actual use', appearing in Protective's omnibus clause, restrict coverage to those persons who have some active, direct relationship with the insured vehicle. While we will not remove from coverage a risk which a policy can be reasonably construed to protect against, *American States Ins. Co. v. Aetna Life & Cas. Co.* (1978), 177 Ind.App. 299, 379 N.E.2d 510, we also decline to extend coverage to one remotely connected with the insured vehicle. A contrary holding would force truck owners and operators who exercise little or no control over the premises upon which they unload, to bear the financial burden of accidents resulting from the negligent maintenance of the receiving premises.

*Id.* at 790–91.

The *Protective* decision, relied upon in *Miller, supra,* clearly refused to extend policy provisions contemplating "use" to one who *at no time* exercised active control over an insured vehicle.

Recently, in *American Family Mut. v. National Ins.* (1991), Ind.App., 577 N.E.2d 969, this court considered the meaning of the term "use" appearing in a business exclusion clause of an automobile insurance contract. Rejecting a proposed definition of use as "employing an item in one's service," the court noted that the word "use" in similar business exclusion clauses had been considered synonymous with "drive" or "operate." *Id.* at 971.

■ The goal of this court when interpreting an insurance policy is to ascertain and enforce the parties' intent as manifested in the insurance contract. *Id.* The contract here at issue insures against accidents resulting from garage operations. Our inquiry is whether Campos was "using" the tow truck within the scope of garage operations although he had ceased to propel the vehicle. Monroe suggests that the prior decisions of this court limit "use" to the activity of directing or propelling an insured vehicle *at the time* of an accident.

As stated by the trial court, Indiana has no applicable interpretive case law concerning whether the operator of a motor vehicle may, as a matter of law, continue to "use" the motor vehicle while not occupying or maintaining physical contact with the vehicle. Moreover, the decisions in *Protective, supra,* and *American Family, supra,* did not construe "use" in the context of an insurance contract which purported to provide coverage for all uses by an insured "within the scope of garage operations."

■ Thus, we will seek to determine the appropriate coverage of the insurance contract here at issue by looking to the intent of the parties to the contract. We will not remove from coverage a risk which the policy can be reasonably construed to protect against. Further, if reasonable people could differ as to the meaning, the contract should be construed liberally in favor of the insured. *National Mut. Ins. Co. v. Eward* (1987), Ind.App., 517 N.E.2d 95, 100.

■ The contract between Monroe and Allen Towing provides insurance coverage to Allen Towing and its employees who are engaged in the business of towing disabled vehicles. The parties certainly would have contemplated the nature of this business activity. Removal of disabled vehicles from roadways cannot be accomplished solely by the activity of "propelling or directing" the towing vehicle. Reasonable persons would expect that a tow truck operator must engage in other activities during the towing process, some of which will require that he exit the vehicle (e.g. evaluation of the towing scene, securing the vehicle to be towed, attachment of towing equipment to the disabled vehicle, conferring with appropriate officials concerning safety procedures).

Accord: *Hartford Accident & Indemnity Company v. Booker* (1976), 140 Ga.App. 3, 230 S.E.2d 70 ("use" of garbage truck included walking near truck to collect garbage); *Great American Insurance Company v. Cassell* (1990), 239 Va. 421, 389 S.E.2d 476 (firefighter was "using" an insured fire truck as he completed a required report while standing 20 feet from the fire truck); *Stevens v. U.S.F. & G. Co.* (1977), Miss., 345 So.2d 1041 (tow truck operator

was "using" a wrecker when he manually removed debris from the highway).

Construing the policy here at issue in a light favorable to the insured, we conclude that Campos was "using" the tow truck in a manner contemplated by the parties when he was struck by an uninsured motorist.

Affirmed.

GARRARD and BUCHANAN, JJ., concur.