**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 1 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JOHN GARDNER,

　　　　Plaintiff - Appellant,

v.

CONTINENTAL WESTERN
INSURANCE COMPANY,

　　　　Defendant - Appellee.

No. 99-1015

(D. Colorado)

(D.C. No. 98-WY-367-WD)

**ORDER AND JUDGMENT***

Before **TACHA**, **McKAY**, and **ANDERSON**, Circuit Judges.

　　　　This is a diversity declaratory judgment action to determine, under

Colorado law, the applicability of certain uninsured automobile insurance

coverage to injuries sustained by the plaintiff-appellant John Gardner.  The

injuries occurred when Mr. Gardner pulled out of traffic on Interstate 25 near the

location of an accident and left his vehicle to determine whether those involved in

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the accident needed assistance. While standing in the highway median he was struck and injured. The central policy coverage question is whether Mr. Gardner was "using" his vehicle at the time he was injured. Alternatively, Mr. Gardner contends that he is entitled to the broader coverage afforded under the policy to the named insured or a family member of the named insured, since the policy was issued to a corporation and such terms as "you" or a "family member" inject an ambiguity that must be resolved in his favor. The district court granted the insurance company's motion for summary judgment against Mr. Gardner on both of the issues described above. Mr. Gardner appeals on both questions and, in addition, moves that we certify these questions to the Colorado Supreme Court. For the reasons stated below, we decline to certify the issues, and affirm the judgment of the district court.

## BACKGROUND

As indicated, this action arises out of an injury sustained by Gardner at the scene of a motor vehicle accident that occurred on November 27, 1996, on Interstate 25 south of Colorado Springs. At the time of the accident Gardner was employed by RGT Construction, Inc., and was traveling southbound in an RGT truck en route to the company's job site in Pueblo, Colorado. The vehicle was insured by the defendant in this action, Continental Western Insurance Company,

through a policy of insurance issued to RGT. The policy, as required by Colorado law, included uninsured motorist coverage.

The vehicles involved in the accident were off the snow-covered road and in the median strip. As Gardner neared the vehicles, traffic slowed, apparently because of another accident further down the highway. Eventually Gardner was forced to stop his vehicle at a point adjacent to the accident in question but out of the direct line of traffic. He then put on his emergency flashers, exited his truck and walked to the cars in the median. While the parties have not stipulated to Gardner's purpose in exiting his vehicle, Gardner's deposition testimony, which was before the district court and has been provided to us, states that he exited the truck to see if anyone needed assistance.

While he was standing in the median between two cars, the driver of another vehicle lost control, drove into the median and hit one of the cars. The force of the impact pushed the first car into the other, crushing Gardner's leg between them. The driver of the car that caused Gardner's injuries was apparently uninsured. Subsequently, Gardner filed an insurance claim with Continental Western, seeking to recover under the uninsured motorist ("UM") provisions of the policy issued to RGT. Continental Western denied coverage, asserting that the policy did not apply under the circumstances of the accident. Gardner then sued Continental Western in Colorado state court, and Continental

Western removed the action to the United States District Court for the District of Colorado. After the parties stipulated to the relevant facts, both parties moved for summary judgment. After reviewing Colorado law and the insurance policy terms, the district court granted Continental Western's summary judgment motion, ruling that Gardner was not covered under the policy because the insured vehicle was not being used at the time of the accident and Gardner had essentially become a pedestrian after he left his vehicle.

## DISCUSSION

We review the district court's grant of summary judgment de novo, applying the same standard as the district court.[1] See UMLIC-Nine Corp. v. Lipan Springs Dev. Corp., 168 F.3d 1173, 1176 (10th Cir.), cert. denied, 68 U.S.L.W. 3321 (U.S. Nov. 15, 1999) (No. 99-486). Under that standard, summary judgment is appropriate when the evidence, taken as a whole, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Id. (quoting Fed. R. Civ. P. 56(c)). Because the

---

[1] While this is a diversity action, "as a matter of independent federal procedure, we utilize the normal federal standards of appellate review to examine the district court's decision process." Mid-America Pipeline Co. v. Lario Enters., Inc., 942 F.2d 1519, 1524 (10th Cir. 1991).

parties have stipulated to virtually all of the relevant facts, we need only

determine whether the district court correctly applied the substantive law.  See id.

In this diversity case, the law controlling this insurance policy is the law of

Colorado as announced by that state's highest court.  See Wood v. Eli Lilly &

Co., 38 F.3d 510, 512 (10th Cir. 1994); see also Erie R. Co. v. Tompkins, 304

U.S. 64 (1938).  Where the Colorado Supreme Court has not yet addressed an

issue, we seek to predict how that court would decide the question if faced with

it.  See Farmers Alliance Mut. Ins. Co. v. Bakke, 619 F.2d 885, 888 (10th Cir.

1980).  In our inquiry we may consider all resources available, including

decisions of Colorado, other states, and federal decisions, and the general weight

and trend of authority.  See id.  The district court's determination of state law is

subject to de novo review.  See Salve Regina College v. Russell, 499 U.S. 225,

231 (1991).


**A.**

As to the first issue, the parties agree that the policy language we must

construe and apply extends coverage to "[a]nyone else while using with your

permission a covered 'auto'."  Policy, Section II.A.1; Appellant's App. at 33

(emphasis added).[2]  Thus, the question is whether Mr. Gardner was injured <u>while he was using</u> his vehicle.  He contends that he was using the vehicle in the broad sense of that term because:  (a) he would not have been at the location of the accident but for the use of his vehicle, <u>see</u> Appellant's Reply Br. at 4; and (b) he was acting as a Good Samaritan and, as a matter of practicality and social policy, rendering aid falls within the foreseeable use of a vehicle, <u>see id.</u> at 4-7.

There are no Colorado cases directly on point.  In <u>Aetna Casualty & Surety Co. v. McMichael</u>, 906 P.2d 92 (Colo. 1995), the Colorado Supreme Court, addressing the meaning of the term "use" in a policy similar to the one here, stated as follows:

> As in the majority of other jurisdictions, we have required some causal relationship between the claimant's injuries and the use

---

[2]The actual uninsured motorist coverage section of the policy in this case defines an insured as:

B.    WHO IS AN INSURED
1.    You.
2.    If you are an individual, any "family member".
3.    Anyone else "<u>occupying</u>" a covered "auto" or a temporary substitute for a covered "auto". . . .

Policy, Uninsured Motorists Endorsement, Section B; Appellant's App. at 43 (emphasis added).  However, in <u>Aetna Cas. & Sur. Co. v. McMichael</u>, 906 P.2d 92, 98 (Colo. 1995), the Colorado Supreme Court held that under Colorado law uninsured motorist coverage in a policy must be coextensive with liability coverage under the policy.  Here, that coverage applies to others "while using" the covered auto.  Hence, as Continental Western concedes, that language, rather than the "occupying" language, controls.

-6-

of the insured vehicle when evaluating claims for automobile insurance benefits. The reason for this causal requirement is to ensure that there is some nexus between the vehicle's use and the injury. The nexus guarantees that the accident is within the kind of risks that the automobile insurance contract was meant to cover.

. . . [W]e have interpreted the test as requiring the plaintiff to show only that the injury originated in, grew out of, or flowed from a use of a vehicle. Thus, the causation test does not require that the insured vehicle itself be the source of the injury, only that the use be integrally related to the claimant's activities and the injury at the time of the accident.

Id. at 103 (citations omitted).

The Colorado Supreme Court cases illustrate the court's view of "use" that is "integrally related" to the claimant's activities at the time of an injury. For example, in McMichael the plaintiff parked his company-owned truck in the median of the roadway, positioning it between the oncoming traffic and the area where he planned to work. The truck had been specially equipped with an overhead beacon and emergency flashers, which he engaged before leaving the truck to work on a concrete barrier in the median, where he was struck by a car. Though he was away from his vehicle when injured, the court concluded that he was using the truck as a barrier and a warning device – as it was designed to be used – and that he was thus entitled to UM insurance coverage. Similarly, see Kohl v. Union Ins. Co., 731 P.2d 134, 135-36 (Colo. 1986) (injury resulting from accidental discharge of rifle when rifle was removed from four-wheel-drive vehicle's gun rack arose out of use of vehicle); Titan Constr. Co. v. Nolf, 515

P.2d 1123, 1126 (Colo. 1973) (injury sustained during unloading of cement truck when pipe connected to truck knocked brick off roof arose out of use of truck); Trinity Universal Ins. Co. v. Hall, 690 P.2d 227, 231 (Colo. 1984) (injury to customer when permanent awning of refreshment delivery truck collapsed arose out of use of truck as refreshment stand).

Other jurisdictions have also focused on the directness of the relationship between the vehicle and the injury. See Great Am. Ins. Co. v. Cassell, 389 S.E.2d 476, 477 (Va. 1990) ("Use of the fire truck to extinguish the fire, control traffic and protect the fire fighters . . . was an integral part of the fire fighters' mission."); Monroe Guar. Ins. Co. v. Campos, 582 N.E.2d 865, 867 (Ind. Ct. App. 1991) (tow truck operator injured while engaged in activity essential to towing process was using vehicle); Thibodeaux v. Burton, 538 So. 2d 1001, 1004-05 (La. 1989) (construction worker working in road and utilizing truck with flashing yellow sign was using vehicle); but see Insurance Co. of North America v. Perry, 134 S.E.2d 418 (Va. 1964) (police officer who left vehicle to serve warrant not using vehicle when injured).

Mr. Gardner relies on two sources of authority for finding the required relationship in this case. First, he cites a recent Colorado Court of Appeals decision in Metropolitan Prop. & Cas. Ins. Co. v. Neubert, 969 P.2d 733 (Colo. Ct. App. 1998), cert. denied (Colo. Jan. 19, 1999), in which an injured driver's

insurance was deemed to cover a pedestrian who was injured while attempting to render assistance. The court reasoned that "a person's rendering assistance to victims of a car accident is a foreseeable event arising out of the use of the vehicle." Id. at 735.

Of course, Neubert is distinguishable in the sense that it involved insurance coverage relating to the individual needing assistance, not that of the one coming to render aid. Under Mr. Gardner's reasoning, in Neubert both policies would apply; but the court did not address that scenario. More to the point, the court of appeals had no power, through its language on foreseeability, to alter the test articulated by the Colorado Supreme Court, and we are not persuaded that Neubert can or should dictate the "integral relationship" analysis in this case.

Next, and more central to Mr. Gardner's position, he contends that the public policy of Colorado requires us to extend him UM benefits because he was a Good Samaritan who stopped to render aid to those in need of assistance. He suggests that the principles of the Rescue Doctrine and Colorado's Good Samaritan statute together evidence a public policy and a legislative intent to extend the definition of vehicle "use" to cover his injuries.[3] He cites no Colorado

---

[3]Gardner points out that Colorado exempts from civil liability persons who provide free emergency medical services (the "Good Samaritan" doctrine) and also employs the Rescue Doctrine, whereby "one who has, through his negligence, endangered safety of another may be held liable for injuries sustained by third

(continued...)

-9-

case on point for this proposition. He does cite four cases from other states that are readily distinguishable either because of applicable state statutes or on other grounds.[4]

[3](...continued)
person who attempts to save other from injury." Black's Law Dictionary 1175 (5th ed. 1979) (citing National Dairy Prod. Corp. v. Freschi, 393 S.W.2d 48, 57 (Mo. Ct. App. 1965)). Neither doctrine applies directly to the facts of this case; Gardner is not attempting to avoid his own liability, nor is he seeking, in this action, to impose liability on a negligent party. However, we do not understand Gardner to argue that either of these doctrines controls our decision, only that these doctrines evidence Colorado courts' view that rescue efforts are socially beneficial and should be encouraged.

[4]Of these cases, only Day v. Coca-Cola Bottling Co. contains policy language limiting coverage to when the claimant is occupying or using the insured vehicle. See 420 So. 2d at 518. However, in Day, the court's brief discussion of public policy focused not on whether the plaintiff was occupying his vehicle when he was injured, but instead addressed the question of whether the plaintiff could be found contributorily negligent in his rescue attempt. Day does not suggest that the analysis of whether an individual is using or occupying a vehicle differs when that individual is acting as a Good Samaritan.

The other three cases cited by Gardner all involve specific state statutory provisions. Additionally, these cases do not discuss policy language that limits coverage to when the claimant is using or occupying the insured vehicles; instead, they address the question of whether the plaintiff's injuries arose out of the use of a vehicle other than the insured's. In Burns v. Market Transition Facility of New Jersey, 657 A.2d 472 (N.J. Super. Ct. App. Div. 1995), a Good Samaritan was awarded personal injury protection (PIP) benefits under a statute requiring insurers to extend PIP coverage to named insureds who sustain bodily injury as a result of an accident while occupying an automobile. Because the plaintiff, who was injured when he climbed inside one of the vehicles involved in the accident, was occupying an automobile when he was injured, the court awarded him PIP insurance benefits. However, there was no policy or statutory requirement that, to be covered, the plaintiff be using or occupying his own insured vehicle.

Similarly, in Tornatore v. Selective Ins. Co., 695 A.2d 313 (N.J. Super. Ct. App. Div. 1997), a Good Samaritan who stopped at an accident to render aid was

(continued...)

Clearly, we would be extending Colorado law if we were to accept

Mr. Gardner's Good Samaritan argument. Furthermore, we would be doing so in

the face of the Colorado Supreme Court's requirement that insurance contract

interpretation must be consistent with "the kind of risks that the automobile

insurance contract was meant to cover." McMichael, 906 P.2d at 103. We are

unwilling to speak for the state as to whether the law relating to insurance

coverage should be extended in the manner sought here, and we find sufficient

guidance in existing state supreme court decisions to decline the invitation on the

merits.

In sum, we agree with the district court that Mr. Gardner was not injured

"while using" his vehicle. Accordingly, the policy provision extending coverage

to anyone "while using" the insured vehicle does not cover his accident.

**B.**

---

[4](...continued)
granted UM coverage under his personal auto insurance policy because his injuries arose out of the use of the <u>uninsured vehicle that caused the accident</u>. Presumably because plaintiff was the named insured under the policy, there was no policy requirement that the plaintiff be using his own insured vehicle when injured. See also <u>Hollingsworth v. Schminkey</u>, 553 N.W.2d 591 (Iowa 1996) (named insured was entitled to have a fact-finder assess his claim for UM benefits for injuries he received while dragging an uninsured motorist from his car, as fact-finder might reasonably determine that plaintiff's injuries "arose out of" the maintenance or use of the <u>uninsured motorist's vehicle</u>).

As indicated above, the policy in question defines an "insured" in three categories:

B.    WHO IS AN INSURED
       1.    You.
       2.    If you are an individual, any "family member".
       3.    Anyone else . . . [while using] a covered "auto" . . . .[5]

Policy, Uninsured Motorists Endorsement, Section B; Appellant's App. at 43.

As his alternative argument, Mr. Gardner contends that even if he was not using the vehicle at the time of his injury, he falls within either category 1 ("you") or 2 ("family member"), both of which are entitled to broader coverage than category 3 ("user").[6] He reasons that because RGT Construction, Inc., the named insured to which "you" refers, is a corporation that can neither be injured nor have family members, such terms as "you" and "family member" are at the very least ambiguous. He further contends that such ambiguity must be resolved in favor of coverage; i.e. that in the corporate context the meanings of these terms should be expanded to include corporate employees.

---

[5]See supra note 2.

[6]A named insured is generally entitled to uninsured motorist coverage even when not occupying or using the insured vehicle at the time of the injury. See Appellant's Br. at 18-19; see also 9 Lee R. Russ et al., Couch on Ins. § 123:5 (3d ed. 1996) (unlike permissive users, named insureds are "not required to be associated with the insured auto at the time of the accident in order for coverage to attach").

The only Colorado authority Gardner cites in support of this proposition is Hawkeye-Security Ins. Co. v. Lambrecht & Sons, Inc., 852 P.2d 1317 (Colo. Ct. App. 1993), in which the Colorado Court of Appeals found UM coverage when the wife of the corporation's sole stockholder was injured in an accident unrelated to the insured vehicle. However, Hawkeye involved a definitional section that limited UM coverage to "you" or a "family member," omitting language providing UM coverage for permissive occupiers or users of insured vehicles. Because UM coverage under that policy would be otherwise illusory, the court found coverage for corporate employees in the terms "you" and "family member." However, differences in policy language distinguish Hawkeye from the case presently before us, because here there is a third category explicitly covering "users."

Thus, this case is similar to General Insurance Co. v. Smith, 874 P.2d 412 (Colo. Ct. App. 1993), in which a later panel of the Colorado Court of Appeals enforced identical language as that found in the Continental Western policy at issue. The court found that, unlike the Hawkeye policy,[7] meaningful UM

---

[7]Gardner suggests that the Hawkeye policy may have actually included language extending UM coverage to persons occupying the insured vehicle, despite the fact that the court never discussed such language. However, the Hawkeye court stated that under the policy "only the corporation . . . or a person who is 'related' to the corporation by 'blood, marriage or adoption' . . . may recover such damages." Hawkeye, 852 P.2d at 1319. This seemingly exclusive statement, among others, convinced the Smith court that the Hawkeye policy contained no such language, and we see no other plausible interpretation.

-13-

coverage was still available for the corporation's employees under the language insuring permissive occupiers/users of the corporation's vehicles. Furthermore, the policy clearly stated (as does the Continental Western policy) that coverage was provided to a "family member" only when the named insured was an individual. Because the court found no ambiguity in these contract terms, it enforced them as written.[8]

Reading <u>Hawkeye</u> and <u>Smith</u> together, it seems that in Colorado, coverage extends to corporate employees under the terms "you" and "family member" only where the contract is unavoidably ambiguous or illusory. Most other jurisdictions are even more strict; the majority adhere to the simple principle that the term "'family member' means nothing when 'you' is a corporation, and [] find no coverage" on similar facts and language. <u>American States Ins. Co. v. C&G Contracting, Inc.</u>, 924 P.2d 111, 113 (Ariz. Ct. App. 1996) (citing <u>Pearcy v. Travelers Indem. Co.</u>, 429 So. 2d 1298, 1299 (Fla. Dist. Ct. App. 1983); <u>Economy Preferred Ins. v. Jersey County Constr.</u>, 615 N.E.2d 1290, 1293-94 (Ill. App. Ct.

---

[8]Gardner errs when he suggests that <u>Smith</u> is no longer good law after <u>McMichael</u>, which invalidated policy language limiting UM coverage to those occupying insured vehicles. As detailed above, the effect of <u>McMichael</u> was not to overrule <u>Smith</u>, but rather to extend UM coverage provided under that provision to all permissive users while using the insured vehicle. In essence, the <u>McMichael</u> decision makes the <u>Smith</u> case even more persuasive to our analysis, as it expands, not eliminates, the meaningful coverage provided under that provision.

1993); Huebner v. MSI Ins. Co., 506 N.W.2d 438, 441 (Iowa 1993); Sears v. Wilson, 704 P.2d 389, 392 (Kan. Ct. App. 1985); Langer v. United States Fidelity & Guar. Co., 552 A.2d 20, 22 (Me. 1988); Cutter v. Maine Bonding & Cas. Co., 579 A.2d 804, 807 (N.H. 1990); Buckner v. Motor Vehicle Accident Indem. Corp., 486 N.E.2d 810, 812 (N.Y. 1985); Dixon v. Gunter, 636 S.W.2d 437, 441 (Tenn. Ct. App. 1982)).

Accordingly, because this policy clearly and unambiguously provides UM coverage to RGT's corporate employees when they are using RGT's insured vehicles, we hold that Gardner is not entitled to coverage under policy terms providing coverage to the named insured ("you") and any "family member."

## CERTIFICATION

Gardner asks us to certify both questions in this case, particularly the question of whether Colorado public policy requires insurance companies to provide uninsured motorist coverage to a Good Samaritan who is injured while rendering aid to the victims of a motor vehicle accident. The problem with certification in insurance coverage cases is reflected in the following statement of the Colorado Supreme Court: "When determining the meaning of the term 'use' in an automobile insurance policy, a court must look to the factual circumstances

-15-

in each case, including the particular characteristics of the vehicle and the intention of the parties to the insurance contract." McMichael, 906 P.2d at 102.

A question of whether insurance coverage applies when a Good Samaritan is injured is no less fact bound than any other coverage question. Gardner himself injects critical factual elements into the analysis, such as the fact that the accident occurred on a "limited access highway." Appellant's Reply Br. at 1. Indeed, the number of factual scenarios one could imagine involving a Good Samaritan is virtually limitless. Accordingly, because of the fact-intensive nature of these cases, and because we find sufficient guidance from existing Colorado Supreme Court precedents, we decline to certify this issue.

With respect to the second issue, we conclude that the persuasive authority from the Colorado courts is plain and that the contract unambiguously provides coverage to individuals "while using" the insured vehicle. Accordingly, we decline to certify this issue as well.

**CONCLUSION**

The district court's opinion thoroughly and cogently analyzed and disposed of the issues presented. As indicated above, we fully agree with the district court,

-16-

and, accordingly, the judgment is **AFFIRMED**.  The motion to certify is

**DENIED**.

                                                  ENTERED FOR THE COURT


                                                  Stephen H. Anderson
                                                  Circuit Judge