STONINGTON INSURANCE COMPANY, Appellant–Defendant,

v.

Wiley WILLIAMS, Appellee–Plaintiff.

No. 45A04–0907–CV–371.

Court of Appeals of Indiana.

March 5, 2010.

---

John T. Hume, III, Edward F. Harney, Jr., Mark M. Holdridge, Hume Smith Geddes Green & Simmons, LLP, Indianapolis, IN, Attorneys for Appellant.

Trevor J. Crossen, Wagner Reese & Crossen, LLP, Carmel, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Here, a Texas insurance company issued an insurance policy to a Wisconsin moving company through a Colorado broker and a California insurance services company. An Indiana company was added to the policy as an additional insured and received a certificate amending the policy to that effect. A truck driver for the Indiana company was injured in an accident caused by an uninsured motorist. The accident occurred just after the driver had connected his tractor to a trailer that was registered and garaged in Indiana and covered by the insurance policy at issue. Although many states have had contacts with the underlying insurance contract, we find that Indiana has the most intimate contacts and, consequently, that Indiana substantive law should apply herein. Likewise, we find that the Indiana uninsured motorist statute applies and requires the insurer to provide uninsured motorist coverage at the same limits as its liability coverage.

Appellant-defendant Stonington Insurance Company (Stonington) appeals the trial court's order entering partial summary judgment in favor of appellee-defendant Wiley Williams on Williams's complaint seeking uninsured motorist coverage under an insurance policy issued by Stonington. Stonington raises the following arguments on appeal: (1) the trial court erroneously applied Indiana, rather than Wisconsin, law to this litigation; (2) even if Indiana law applies, the trial court erred by finding that Indiana Code section 27–7–5–2 applies to the facts herein; and (3) the trial court erroneously concluded that Williams was an insured under the Stonington policy at issue. Finding that Indiana law applies, that Indiana Code section 27–7–5–2 applies, and that Williams was an insured under the policy at issue, we affirm.

## FACTS

Stonington is an insurance company located in Texas. On August 11, 2004, an insurance broker located in Colorado requested a quote from R.F. Mattei, an insurance services company located in California, for a policy renewal for Eau Claire Moving & Storage (EC Moving), which is a Wisconsin corporation. In the application enclosed with the quote request, the box was marked indicating that EC Moving was "selecting [uninsured] and [underinsured] motorist limits equal to my liability limits." Appellant's App. p. 226.

In the fall of 2004, Stonington issued a policy (the Policy) of insurance for EC Moving with effective dates from November 1, 2004, through November 1, 2005. The Policy is a comprehensive property, general liability, and auto policy. The limit for Liability coverage is $1,000,000; the limit for Uninsured Motorist coverage is $100,000. *Id.* at 396.

At some point after the Policy was issued, EC Moving requested Stonington to add Atlas World Group, Inc. (Atlas), as an additional insured under the Policy. On November 12, 2004, Stonington amended the Policy by adding Atlas as an additional insured. Stonington delivered a Certificate of Automobile and Comprehensive General Liability insurance to Atlas at its place of business in Evansville. Additionally, an endorsement modifying the Policy was issued, naming Atlas as an insured lessee. *Id.* at 427.

During the relevant period of time, Williams was an employee of or contractor for Atlas. On January 6, 2005, Williams dropped off a trailer at the Atlas agency in Merrillville. Williams was then directed to haul a trailer from Merrillville to New York. The trailer was owned by EC Mov-

ing, leased to Atlas, and registered in Indiana.

Williams connected the trailer to the tractor, ensuring that the trailer's electrical system and air brakes were connected to and controlled by the tractor, operating as one integrated system. Williams inspected the connections between the tractor and trailer and checked the brake lights, turn signals, and tires. Having completed the connection and inspection procedure, Williams went to the door of the tractor/trailer rig and had his hand on the door handle to get into the cab when he was hit from behind by an uninsured motorist who had lost control of his vehicle. As a result of the accident, Williams sustained severe injuries to both of his legs, requiring multiple surgical procedures and extensive rehabilitation.

On July 10, 2007, Williams filed an amended complaint[1] against Stonington and other defendants. Pertinent to this appeal is Williams's contention that he is entitled to UM benefits under the Policy, which Stonington has refused to pay. On August 14, 2008, Stonington filed a motion for summary judgment, arguing that Williams was not an insured under the Policy at the time of the accident. Williams responded, arguing that he was an insured and that by operation of Indiana Code section 27–7–5–2, the Policy's UM coverage limit is required to be the same amount of the Policy's liability limit—$1,000,000. Stonington replied that Wisconsin, rather than Indiana, law should govern this case and that, consequently, Indiana Code section 27–7–5–2 was inapplicable. Stonington also argued that even if that statute applied, its requirements were not met; thus, the UM coverage limit should remain at the Policy's stated level of $100,000.

Following a hearing, the trial court entered an order on November 5, 2008, granting partial summary judgment in Williams's favor. The trial court concluded that Indiana law applies, that Williams was an insured at the time of the accident, and that the requirements of Indiana Code section 27–7–5–2 were met, meaning that the UM coverage limit is $1,000,000. Stonington filed a motion to reconsider, which the trial court denied on June 2, 2009, reaffirming its initial order, explicitly finding that the requirements of Indiana Code section 27–7–5–2 had been met, and certifying the orders for interlocutory appeal. Stonington now brings this interlocutory appeal.

## DISCUSSION AND DECISION

### I. Standard of Review

We note that summary judgment is appropriate only if the pleadings and evidence considered by the trial court show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 909 (Ind.2001); *see also* Ind. Trial Rule 56(C). On a motion for summary judgment, all doubts as to the existence of material issues of fact must be resolved against the moving party. *Owens Corning*, 754 N.E.2d at 909. Additionally, all facts and reasonable inferences from those facts are construed in favor of the nonmoving party. *Id.* If there is any doubt as to what conclusion a jury could reach, then summary judgment is improper. *Id.*

An appellate court faces the same issues that were before the trial court and follows the same process. *Id.* at 908. The party appealing from a summary judgment decision has the burden of per-

---

1. Williams's original complaint was filed in December 2006.

suading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having his or her day in court. *Id.*

## II. Choice of Law

■■■ Stonington argues that the trial court should have applied Wisconsin, rather than Indiana, substantive law to this dispute. When faced with a choice of law question, the decision is made by the courts of the state in which the lawsuit is pending. *Nat'l Union Fire Ins. Co. of Pittsburgh v. Standard Fusee Corp.,* 917 N.E.2d 170, 176 (Ind.Ct.App.2009). A choice of law analysis is only necessary if there is a conflict between the laws of the states in question. *Id.* Here, there is a potential conflict on the interpretation of "insured" under the Policy, and Indiana's UM statute contains statutory requirements not present in Wisconsin. Therefore, we must determine which state's substantive law applies to resolve the issues raised by Stonington.

### A. General Rules

Indiana generally follows the Restatement (Second) of Conflict of Laws (1971) (Restatement) when confronted with a choice of law issue. *Id.* With respect to contract actions in general, we apply the substantive law of the state that "has the most significant relationship to the transaction and the parties...." Restatement § 188(1). The contacts to be taken into account in determining the applicable law include:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

Restatement § 188(2).

The Restatement has another section, however, that is specific to insurance. Section 193 has been described as addressing " 'that special subset of contracts that involves insurance.' " *Nat'l Union Fire Ins. Co.,* 917 N.E.2d at 176 (quoting *Zurich Ins. v. Shearson Lehman Hutton,* 84 N.Y.2d 309, 618 N.Y.S.2d 609, 642 N.E.2d 1065, 1069 (1994)). Section 193 provides as follows:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Comment a to this section explains that

> [t]here may be no principal location of the insured risk in the case of contracts for the insurance of things, such as ships, trucks, airplanes and railroad cars, that are constantly on the move from state to state. In such a case, the location of the risk can play little role in the determination of the applicable law. The law governing insurance contracts of this latter sort must be determined in accordance with the principles set forth in the rule of § 188.

Comment b goes on to state that

> [a]n insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location,

in the sense here used, in the state where it will be during at least the major portion of the insurance period. . . . The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include (1) where the insured object will be more or less constantly on the move from state to state during the term of the policy and (2) where the policy covers a group of risks that are scattered throughout two or more states. The importance of the risk's principal location will also vary somewhat from case to case. It enjoys greatest significance when an immovable [object] is involved, such as when the risk insured against is damage by fire to a particular building.

To sum up, insurance contracts tend to focus on the principal location of the insured risk. Where, however, there is no set location of that risk, we will turn our attention back to the factors enumerated in Section 188.

### B. The Policy

■ EC Moving is a "full service moving and storage corporation" that is located in Wisconsin. Appellant's App. p. 192. Although the vehicles that are covered by the Policy are largely registered and garaged in Wisconsin, the Policy acknowledges that a number of those vehicles will normally travel a radius of more than 200 miles from EC Moving's principal place of business. *Id.* at 397–98. Additionally, the Policy includes Atlas, an Indiana company, as an additional insured. The trailer at issue herein, which was covered by the Policy, was owned by EC Moving, leased to Atlas, registered in Indiana, and en route to New York. Given these undisput-ed facts, we find that this Policy insures risk for things "that are constantly on the move from state to state." Restatement § 193 cmt. a. Therefore, rather than focusing on the principal location of the insured risk, we will turn to the factors enumerated by Section 188 to determine which state's law should apply herein.

*The Place of Contracting and Contract Negotiation.* Multiple states were involved with the negotiation/application and signing of the Policy. A Colorado insurance broker requested a quote from a California insurance services company, for a renewal of the Policy, which insures a Wisconsin corporation. Stonington, a Texas company, issued the Policy through the Colorado broker to EC Moving at its address in Eau Claire. After the Policy was issued, a certificate amending the Policy by adding Atlas as an additional insured was prepared in California and delivered to Atlas in Indiana. Given these multiple contacts, we cannot conclude that these two factors favor either Indiana or Wisconsin.

■ *The Place of Performance and Location of the Subject Matter.* These two factors "relate to the location where potential liability will arise in the context of insurance contracts." *Employers Ins. Of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015, 1024 (Ind.Ct.App.1999). More specifically,

[t]he place of performance has been defined as the location where the insurance funds will be put to use. However, until all coverage issues have been decided, the place of performance cannot be determined. Accordingly, this factor is assigned little weight when, as here, at the time of contracting the place of performance is either uncertain or unknown.

*Id.* (internal citations omitted). Here, likewise, the place of performance is assigned little weight.

As for location of subject matter—also known as the principal location of the insured risk—we concluded above that this Policy insures risk for things "that are constantly on the move from state to state." Restatement § 193 cmt. a. Most of the vehicles covered by the Policy are registered and garaged in Wisconsin, and most of them have a traveling radius of under 200 miles. That said, the Policy also covers multiple vehicles with a traveling radius of over 200 miles and includes Atlas as an additional insured. Atlas is an Indiana company, and the trailer at issue herein was registered and principally garaged in Indiana and being used in Indiana at the time of the incident. Whether or not the majority of the vehicles covered by the Policy were located in Wisconsin is not determinative, inasmuch as Stonington elected to cover an Indiana lessee as well. Therefore, this factor is inconclusive.

Stonington directs our attention to *Kentucky National Ins. Co. v. Empire Fire and Marine Ins. Co.*, in which this court recently considered a choice of law issue. 919 N.E.2d 565 (Ind.Ct.App.2010). In *Kentucky National*, the insured was a Kentucky corporation with offices located in Kentucky. The insured's application for insurance indicated that it was seeking coverage for sixty vehicles in Kentucky, two vehicles in Indiana, one vehicle in Florida, and one vehicle in Pennsylvania. An accident occurred in Indiana involving a covered vehicle that was being driven from the Kentucky office to an auto auction in Indiana. Given those facts, this court found that Kentucky was the principal location of the insured risk and applied Kentucky law to the dispute. *Id.* at 576.

We find *Kentucky National* distinguishable from the situation herein. Here, although EC Moving is a Wisconsin corporation with offices located in Wisconsin, many of the covered vehicles have a travel-ing radius that would take them outside of Wisconsin. Even more compelling, the Policy was amended to cover an Indiana company. Among the Atlas vehicles covered by the Policy was the trailer at issue herein, which was registered and garaged in Indiana. We find these contacts with Indiana sufficient to distinguish this situation from *Kentucky National* and to render the subject matter of the risk an inconclusive factor.

*The Parties' Place of Business.* Stonington is a Texas company; EC Moving is a Wisconsin company. Atlas is located in Indiana, and Williams is a resident of Ohio. Therefore, this factor does not favor either Wisconsin or Indiana.

In sum, none of these factors is conclusive. Taking a step back, we observe that a certificate amending the Policy to name Atlas, an Indiana company, as an additional insured was delivered in Indiana. The trailer was leased, garaged, and registered in Indiana. The accident occurred in Indiana. Under these circumstances, we find that Indiana has the most significant relationship to the transaction and the parties. Therefore, the trial court properly elected to apply Indiana law to this litigation.

### III.   Indiana UM Statute

#### A.   Does Indiana UM Statute Apply

■ Having determined that Indiana law applies to this appeal, we must next consider whether the Indiana UM Statute also applies. Indiana Code section 27–7–5–2 includes the relevant requirements for insurers relating to UM coverage, and it applies to "each automobile liability or motor vehicle liability policy insurance *which is delivered or issued for delivery in this state* with respect to any motor vehicle registered or principally garaged in this state. . . ." (Emphasis added.)

Stonington argues that the Policy was not delivered or issued for delivery in Indiana; thus, it contends that the UM Statute does not apply. It is undisputed that the Policy itself was not delivered or issued for delivery in Indiana. The Certificate of Automobile and Comprehensive General Liability (Certificate) that amended the Policy by adding Atlas as an additional insured was, however, delivered in Indiana. We agree with Williams that the Certificate actually contains an agreement of coverage by adding Atlas to the Policy:

> ... insofar as the rights of Atlas under said [P]olicy are involved, the definition of Insured clause is amended to read as follows:

> "DEFINITION OF INSURED": The unqualified word "Insured" whenever used includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use of it. . . .

> \* \* \*

> That such insurance as is afforded by the policy for bodily injury liability applies to any automobile, trailer, or tractor and semi-trailer, owned, operated, maintained, rented under contract to or from others, leased to or from other or used by the named insured any place in the United States of America. . . .

Appellant's App. p. 510. The Certificate is signed by Stonington and is an agreement that Stonington will cover Atlas as an additional insured under the Policy; in addition, the Certificate states that the Policy may not be canceled or changed without at least thirty days written notice to Atlas. We find that the Certificate is an agreement to insure; that it is entitled "Certificate" is of no moment given the substance of the document, which amends the Policy to provide coverage for Atlas.

Our Supreme Court has explained that the UM statute is "directed at insurers operating within Indiana and its provisions are considered to be a part of every automobile liability policy as if written therein." *United Nat'l Ins. Co. v. DePrizio,* 705 N.E.2d 455, 460 (Ind.1999). Here, the Certificate amending the Policy was delivered in Indiana, to an Indiana company, naming that Indiana company as an insured, and covering a vehicle registered and principally garaged in Indiana. We find these facts sufficient to establish that the Policy—via the Certificate—was issued for delivery in Indiana, that Stonington was operating within Indiana, and that the UM statute applies. *See Aperm of Florida, Inc. v. Trans–Coastal Maintenance Co.,* 505 So.2d 459, 462 (Fla.Ct.App.1987) (holding that a policy if a policy is written to cover risks in Florida then it will be assumed that the policy was "issued for delivery" in Florida).

### B. Effect of UM Statute on Policy Definition of "Insured"

Next, we must determine whether Williams is an insured under the Policy such that coverage becomes an issue. It is well established that insurance policies are governed by the same rules of construction as other contracts. *Wurster Const. Co., Inc. v. Essex Ins. Co.,* 918 N.E.2d 666, 679 (Ind.Ct.App.2009). More specifically,

> "The construction of an insurance policy is a question of law for which summary judgment is particularly appropriate. Insurance policies are contracts that are subject to the same rules of construction as are other contracts. When the language of an insurance contract is clear and unambiguous, we will assign to the language its plain and ordinary meaning. An insurance policy that is unambiguous must be enforced according to its terms, even those terms

that limit an insurer's liability. Thus, we may not extend insurance coverage beyond that provided by the unambiguous language in the contract. Moreover, insurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions. However, to be enforced, these limitations must be clearly expressed and must be consistent with public policy.

"An insurance contract will be deemed ambiguous only if reasonable people would honestly differ as to the meaning of its terms. However, an insurance contract is not regarded as ambiguous simply because controversy exists, and the parties have asserted contrary interpretations of the language of the contract."

*Grinnell Mut. Reinsurance Co. v. Ault,* 918 N.E.2d 619, 625 (Ind.Ct.App.2009) (quoting *Amerisure, Inc. v. Wurster Const. Co.,* 818 N.E.2d 998, 1001–02 (Ind.Ct.App. 2004)).

The Policy provides the following general definitions:

B. "Auto" means a land motor vehicle, "trailer" or semitrailer designed for travel on public roads but does not include "mobile equipment".

\* \* \*

G. "Insured" means any person or organization qualifying as an insured in the Who is An Insured provision of the applicable coverage. . . .

\* \* \*

P. "Trailer" includes a semitrailer or a dolly used to convert a semitrailer into a trailer. . . .

Appellant's App. at 409–11. The Policy's section on liability coverage defines "Who is an Insured" as follows, in relevant part:

a. You for any covered "auto".[ [2] ]

b. Anyone else while using with your permission a covered "auto" you own, hire or borrow. . . .

*Id.* at 400–01.

The Policy has a different definition of "insured" relating to UM coverage. In the endorsement regarding UM Coverage, "Who is an Insured" is defined as follows, in relevant part:

If the Named Individual is designated in the Declarations as:

\* \* \*

2. A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

a. Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". . . .

*Id.* at 418. "Occupying" is defined as "in, upon, getting in, on, out or off." *Id.* at 420. The endorsement specifically relating to Atlas states that Atlas is an insured under the Policy. *Id.* at 427.

■ It is well established that it is a violation of the UM statute if " 'an insurance policy specifically limits uninsured motorist protection as to persons who would otherwise qualify as insureds for liability purposes.'" *Harden v. Monroe Guar. Ins. Co.,* 626 N.E.2d 814, 819 (Ind. Ct.App.1993) (approving of a policy definition of "insured" because it did not limit UM protection to a person who otherwise qualified as an insured) (quoting *Anderson v. State Farm Mut. Auto. Ins. Co.,* 471 N.E.2d 1170, 1175 (Ind.Ct.App.1984)). *See also Veness v. Midland Risk Ins. Co.,* 732

---

**2.** Stonington does not dispute that the trailer at issue herein is a covered auto.

N.E.2d 209, 214–15 (Ind.Ct.App.2000) (holding that the "legislature intended . . . those persons insured under the liability portion of the policy should be entitled to UM/UIM coverage. In the present case, it is undisputed that Veness is an insured under the liability provision of her policy; therefore, she is entitled to UM/UIM coverage"); *Connell v. Am. Underwriters, Inc.*, 453 N.E.2d 1028, 1030 (Ind.Ct.App. 1983) (holding that "[p]ersons defined as 'insureds' under the liability section of an insurance policy are those for whom the legislature intended uninsured motorist benefits"); *Vernon Fire & Cas. Ins. Co. v. Am. Underwriters, Inc.*, 171 Ind.App. 309, 314, 356 N.E.2d 693, 696 (1976) (refusing to approve insurance policy that had a narrower definition of "insured" under UM section than liability section because it was in derogation of the UM statute).

■■■ Here, a person is an "insured" for liability purposes if that person is "using" a covered auto. Appellant's App. p. 400–01. For UM coverage purposes, however, the Policy further limits the definition of "insured" to a person who is "occupying" a covered auto. *Id.* at 418. This limitation is in derogation of the UM statute; consequently, we will not apply it herein.

As to whether Williams was "using" the trailer at the time of his accident, we note that this court has held that a person can be using a vehicle while not occupying it or maintaining any physical contact with it. *Monroe Guar. Ins. Co. v. Campos*, 582 N.E.2d 865, 870 (Ind.Ct.App.1991) (observing that reasonable people would expect that a tow truck operator must engage in other activities during the towing process, including exiting the vehicle for evaluation of the towing scene, securing the vehicle to be towed, attaching of the towing equipment to the disabled vehicle, and conferring with appropriate officials regarding safety procedures).

Here, just before the accident, Williams had connected the trailer to the tractor, ensuring that the trailer's electrical system and air brakes were connected to and controlled by the tractor, operating as one integrated system. He had inspected the connections between the tractor and trailer and checked the brake lights, turn signals, and tires. Having completed the connection and inspection procedure, Williams went to the door of the tractor and had his hand on the door handle to get into the cab when he was hit from behind. Although he was not physically in contact with the trailer at the time of the accident, we can only conclude that the act of getting into the cab of the tractor in order to pull the trailer is incidental to the actual operation of the trailer.

Thus, we find that Williams was, in fact, "using" the trailer at the time of the accident. Because he was "using" the trailer, he was an insured under the liability section of the Policy, which also means that he was an insured under the UM coverage section of the Policy. Therefore, Williams is entitled to UM coverage.

### C. UM Policy Limits

We have found that Williams is an "insured" who was covered by the Policy at the time of the accident and that the Indiana UM Statute applies. Among other things, that statute requires that covered policies must have UM limits equal to liability limits unless those limits were rejected in writing by a named insured. It is undisputed that EC Moving did not reject those limits in writing; indeed, the Policy application indicates that EC Moving explicitly requested that its UM limits equal its liability limits. The Policy has a liability limit of $1,000,000, and the UM Statute requires that the Policy's UM limits be the same. Therefore, the trial court properly determined that Williams is enti-

tled to UM coverage of up to $1,000,000 under the Policy.

The judgment of the trial court is affirmed.

BAILEY, J., and ROBB, J., concur.