Sharmeika MOONS and Randy
Williams, Appellants–
Plaintiffs,

v.

Calvin KEITH and State Farm Mutual
Automobile Insurance Company,
Appellees–Defendants.

No. 45A03–0102–CV–53.

Court of Appeals of Indiana.

Nov. 20, 2001.

≈223.2(1.1)

---

Ross Hubbell, Gary, Indiana, Attorney for Appellants.

Kevin G. Kerr, Hoeppner, Wagner & Evans, Valparaiso, Indiana, Attorney for Appellee State Farm Mutual Automobile Insurance Company.

## OPINION

VAIDIK, Judge.

### Case Summary

Sharmeika Moons and Randy Williams appeal the trial court's entry of summary judgment for State Farm Mutual Automobile Insurance Company (State Farm). They assert on appeal that the trial court erred in granting summary judgment for State Farm because their injuries arose from the operation, maintenance, or use of an uninsured automobile. Because we find that there is no causal relationship between the vehicle and the injuries sustained by Moons and Williams, we affirm.[1]

### Facts and Procedural History

On October 30, 1997, Williams was driving a Buick Regal in Gary, Indiana. Taranee Lewis, Moons, and her son Quincy were all passengers in the car at the time. As he was stopped at the intersection of Fifteenth Avenue and Clark Road, Williams saw Calvin Keith turn his vehicle around and position his car in the intersection beside the Buick Regal Williams was driving. Keith rolled the window down, turned up the volume on the radio, and began firing shots from his pistol into the Buick Regal. The Buick Regal was blocked by another stopped car, and thus, Williams was unable to drive away. Keith fired seventeen shots into the car, injuring the occupants. The two cars did not come into contact during the incident.

The car Williams was driving was insured with State Farm. The policy contains an uninsured benefits provision, which reads, "[w]e will pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance, or use of an uninsured motor vehicle." Appellant's App. P.7 and Appellee's App. P.13. Williams and Moons sought coverage for their injuries under this policy. State Farm denied coverage because the occu-

---

1. We held oral argument in this case on August 24, 2001, at the Lake County Superior Court in Hammond, Indiana as a part of the Indiana Court of Appeal's centennial celebration. We express our appreciation to the Lake County Bar Association, the Women's Bar Association, the Hispanic Bar Association, the Kimbrough Bar Association and Judge Diane Kavadias Schneider and her staff for their hospitality. In addition, we thank the attorneys for the quality of their presentations.

pants' injuries did not arise out of the operation, maintenance, or use of an uninsured vehicle. Williams and Moons then filed a complaint against State Farm. State Farm moved for summary judgment, asserting that Williams and his passengers being shot was not a risk reasonably contemplated when the policy was issued. After a hearing, the trial court granted the motion. Williams and Moons now appeal.

## Discussion and Decision

Williams and Moons contend that the trial court erred in granting State Farm's motion for summary judgment. When reviewing the grant or denial of summary judgment, we apply the same standard as the trial court. *Shelter Mutual Ins. Co. v. Barron*, 615 N.E.2d 503, 505 (Ind.Ct.App.1993), *trans. denied*. Summary judgment will only be granted if the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* Further, all evidence must be construed in favor of the party opposing the motion, and any doubt as to the existence of a material issue must be resolved against the moving party. *Id.*

Specifically, Moons and Williams argue that their injuries arose from the use of an uninsured vehicle driven by Keith, and therefore, the insurance policy from State Farm covers their injuries. "The interpretation and construction of insurance policy provisions is a function for the courts." *State Farm Mut. Auto. Ins. Co. v. Spotten*, 610 N.E.2d 299, 300 (Ind. Ct.App.1993), *trans. denied*. When interpreting an insurance policy, we strive to ascertain the intent of the parties as manifested in the insurance contract. *Id.* We will not remove a risk from coverage if the policy can be construed to reasonably protect that risk. *Id.* Further, if an ambiguity exists in the contract, the contract will be construed liberally in favor of the insured. *Id.* An ambiguity exists if reasonable people could differ as to the meaning of the language used. *Id.*

In this case, Moons and Williams invite this court to adopt a broad construction of the phrase "arising out of the operation, maintenance, or use of an uninsured vehicle" in order to find coverage where the driver of an uninsured vehicle shoots and injures an insured in another vehicle. They cite cases from other jurisdictions, which have concluded that gunshot injuries resulting from a vehicle chase or altercation arose from the operation, maintenance, or use of the motor vehicle. *See e.g., State Farm Mut. Auto. Ins. Co. v. Davis*, 937 F.2d 1415 (9th Cir.1991) (holding that a shooting by an insured while a passenger in his vehicle was covered under an insurance policy with similar language); *Quarles v. State Farm Mut. Auto. Ins. Co.*, 533 So.2d 809, 812 (Fla.Dist.Ct.App. 1988) (concluding that a "significant causal connection" existed between vehicle use and the injury sustained by a pedestrian who was shot when the vehicle owner removed a shot gun from the permanently attached gun rack on his truck and the gun discharged); *Cont. W. Ins. Co. v. Klug*, 415 N.W.2d 876, 878 (Minn.1987) (holding that the assailant's vehicle was an "active accessory" because the assailant used it to position himself to shoot the insured); *Gen. Accident Ins. Co. of America v. Olivier*, 574 A.2d 1240, 1242 (R.I.1990) (finding a sufficient nexus existed between the injury and the vehicle when a "broad" construction of uninsured motorist coverage was employed).

Conversely, State Farm relies upon cases holding that the vehicle is nothing more than the site of the injury and the fact the assailant was in a vehicle was incidental. State Farm asserts that these cases along with the Indiana Supreme Court's construction of the phrase "arising

out of the ownership, maintenance, or use of an automobile," support a narrow construction of the phrase. *See e.g., Ruiz v. Farmers Ins. Co. of Arizona,* 177 Ariz. 101, 865 P.2d 762, 764 (1993) (finding that contractual and statutory requirement that injury arise out of the use of the uninsured vehicle was not met by showing that injury arose while "using" an uninsured car not as a car, but as a gun platform); *State Farm Fire & Cas. Co. v. Rosenberg,* 319 Ill.App.3d 744, 253 Ill.Dec. 793, 746 N.E.2d 35, 40 (2001) (holding that injuries sustained by insured who was kidnapped during theft of her vehicle, shot in car by uninsured assailant while he was driving the stolen car, and then pushed her out of moving car were not covered because injuries did not arise out of·the operation or use of the vehicle and the instrumentality of injury was the gun); *Curtis v. Birch,* 114 Ill.App.3d 127, 69 Ill.Dec. 873, 448 N.E.2d 591, 595 (1983) (affirming dismissal of complaint filed on behalf of insured killed by shots of driver of uninsured vehicle because instrumentality of injuries was a handgun and fact that assailant was in the car at the time was "merely incidental"); *Coleman v. Sanford,* 521 So.2d 876 (Miss.1988) (holding that the voluntary and deliberate act of shooting the driver of another vehicle was an independent act which rendered a vehicle's use incidental); *State Farm Mut. Auto. Ins. Co. v. Whitehead,* 988 S.W.2d 744 (Tex.1999) (reasoning that the fact that a car is the situs of an accident is insufficient to show the necessary nexus between the use and the accident needed to conclude that the accident resulted from the use of the vehicle).

■ Although there are cases on both sides of this issue from other jurisdictions, whether the uninsured motorist provision of an automobile liability policy extends to cases where an uninsured driver shoots and injures someone in another vehicle is a matter of first impression in Indiana. The Indiana Supreme Court defined the meaning of the phrase "arising out of the ownership, maintenance, or use of a vehicle" in the context of injury occurring during the loading and unloading of a vehicle. *Ind. Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.,* 260 Ind. 32, 291 N.E.2d 897 (1973). In *Lumbermens,* the language was contained in an omnibus clause of a commercial truck liability policy. A delivery truck driver was injured when he moved a water softener into a house and descended basement stairs which gave way and resulted in the driver suffering injuries. Since the injured person claiming to be insured was not a party to the insurance contract, our supreme court was not in a situation where they had to "construe the contract language any certain way and [could] seek out the general intent from a neutral stance." *Id.* at 899. Our supreme court stated that "the 'efficient and predominating cause' of the accident must arise out of the use of the vehicle in order for an unnamed insured to be covered." *Id.* The court explained that:

> Before there is coverage under a policy extending to loading and unloading, there must be *some connection between the use of the insured vehicle and the injury,* and unless the court can determine that the loading or unloading of the vehicle was an efficient and producing cause of the injury, there is no right of indemnity for the accident. In other words, *liability of an insurance company under the policy depends on the existence of a causal relationship between the loading or unloading and the injury,* and if the injury was proximately due to the unloading, the insurance company is liable, while if the accident had no connection with the loading or unloading there is no liability.

*Id.* at 899 (emphasis added)(quoting 8 Blashfield, AUTOMOBILE LAW & PRACTICE

§ 317.10 (1966)). Accordingly, in order to find coverage, there must be a causal connection or relationship between the vehicle and the injury.

In this case, there was not a causal relationship shown between the vehicle and the injuries sustained by Moons and Williams. The only evidence from the designated affidavits indicated the vehicle was merely used to transport Keith to the scene. Keith did not chase Moons and Williams in his car. The shooting was not the result of road rage. The cars did not touch. The facts of this case, as presented to us, do not establish a causal relationship between the vehicle and the injuries sufficient to invoke coverage under the uninsured motorist provision. We are not saying that the facts here could not present a different picture, but based on what was designated, we cannot speculate as to what precipitated this incident. Had a more specific tie between the vehicle and the injuries been shown, then the vehicle might have been more than the mere situs. Thus, State Farm is not liable for Moons' and Williams' injuries under the uninsured motorist provision of the insurance policy.

Moreover, although a causal connection must exist between the vehicle and the injury, the relationship between the two must not be too remote:

It has been stated that the liability of an insurer under the "ownership, maintenance, or use" provision should be measured in accord with the terms of a policy as understood by a person of reasonable intelligence. The word "coverage" as used in automobile liability policy means the sum of risks which the policy covers. Ownership, maintenance, or use of the automobile need not be the direct and efficient cause of the injury sustained. Rather, the courts have only required that some form of *causal relationship exist between the insured vehicle and the accident.* However, liability does not extend to results distinctly remote, though within the line of causation.

6B John Alan Appleman & Jean Appleman, INSURANCE LAW & PRACTICE, § 4317 (Buckley ed.1979)(emphasis added). In the present case, the vehicle from which Keith shot only remotely contributed to the injuries by transporting Keith to the scene and by containing Keith as he fired the shots.

In support of their arguments, both parties cite *State Farm Mutual Automobile Insurance Company v. Spotten*, 610 N.E.2d 299, 300 (Ind.Ct.App.1993), *trans. denied.* Spotten was stopped at a traffic light when he noticed another vehicle in the lane next to him. A passenger in the other vehicle fired a shotgun into Spotten's vehicle, hitting him and causing injury. He filed a complaint against the driver and the passengers of the other vehicle. He also filed a claim with State Farm pursuant to a provision paying damages for bodily injury arising out of the operation, maintenance, or use of an uninsured vehicle. State Farm intervened in Spotten's action against the driver and the passengers and moved for summary judgment. The trial court denied the motion.

On appeal, we concluded that the contemplation of the parties to the insurance contract was not ambiguous, given that the policy clearly limits damages to those an insured is legally entitled to collect from the owner or driver of an uninsured vehicle. *Id.* at 302. At trial, there was no evidence regarding whether the driver intentionally aided the passenger, negligently allowed the passenger with a gun in the vehicle, or had knowledge about the gun or the passenger's intent to fire it. *Id.* We gave the insurance provision its plain meaning and held that "[a] random act of violence by a vehicle passenger—which

may or may not have been perpetrated with the acquiescence of the driver/owner—is not a risk reasonably contemplated by the parties and expressed in the contract." *Id.* In other words, our opinion turned on the fact that it was the passenger who was the shooter and not the driver. We reached this conclusion without examining causation. Therefore, we find that the reasoning of *Spotten* provides little guidance to us.

▮▮▮▮ Finally, Moons and Williams argue that the doctrine of *in pari materia* requires that we look to the criminal statutes to define the term "use" as it appears in the statute specifying the provisions an insurer must make available in each automobile liability policy. *See* Ind.Code § 27–7–5–2. Statutes relating to the same general subject matter are *in pari materia* and should be construed together so as to produce a harmonious statutory scheme. *Indiana Payphone Ass'n v. Inc. v. Indiana Bell Telephone Co., Inc.,* 690 N.E.2d 1195, 1199 (Ind.Ct.App.1997), *trans. denied.* In this instance, the insurance statute and the criminal statutes do not relate to the same subject matter. Accordingly, we are unconvinced by this argument and decline the invitation to apply *in pari materia.*

Therefore, we affirm the trial court's grant of summary judgment in favor of State Farm.

Judgment affirmed.

ROBB, J., concurs.

RILEY, J., dissents with separate opinion.

Judge, RILEY, dissenting.

I respectfully dissent. The summary judgment record, read in favor of Moons and Williams, established that the uninsured vehicle, being driven by Keith, approached the car being driven by Williams. Keith drove up next to the passenger side of the vehicle and because Williams' car was blocked by another stopped car, Williams was unable to drive away. Only because Keith was able to drive his car next to the Williams' car and use his vehicle to position himself to fire shots, was he able to shoot at his target. The use of Keith's uninsured vehicle due to its speed and location were necessary and integral parts to the shooting. It also allowed the shooter a quick and efficient escape after he had entrapped Williams' car behind the car in front of it. In my view, the bullet wound injuries of Moons and Williams are inexorably bound to the shooter's use of the uninsured vehicle.

Indiana's uninsured motorist statute requires that insurers make uninsured and underinsured motorist coverage available to insureds in every automobile liability policy. *Harden v. Monroe Guar. Ins. Co.,* 626 N.E.2d 814, 818 (Ind.Ct.App.1993), *trans. denied.* Here, Williams' policy includes an uninsured/underinsured benefit provision which defines an "insured person" in relevant part as:

> We will pay for damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

If the insurance policy language is clear and unambiguous, courts give to that language its plain and ordinary meaning and enforce the contract according to its terms. *Rice v. Meridian Ins. Co.,* 751 N.E.2d 685 (Ind.Ct.App.2001).

Williams is entitled to coverage because he was injured as a result of Keith using his uninsured motor vehicle in a manner that could only have caused injury. Keith used the automobile to position himself to

shoot Williams and Moon. I find a specific tie between the vehicle and the injuries to be more than a "mere situs." I find that the use of the vehicle was not passive but that Keith actively used the vehicle to position himself to shoot the injured parties and to use the vehicle in his escape. *Cf. Protective Ins. Co. v. Coca–Cola Bottling,* 467 N.E.2d 786 (Ind.App.1984), *reh'g. denied, trans. denied.*

I would deny the summary judgment and remand for further proceedings.