STATE of Indiana, Appellant–
Defendant,

v.

T. Eric EVANS, Appellee–Plaintiff.

No. 05A02–0210–CV–875.

Court of Appeals of Indiana.

June 25, 2003.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Ralph E. Dowling, Norris, Choplin & Schroeder, LLP, Indianapolis, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The State of Indiana, by the Attorney General Of Indiana, (collectively "State"), brings this interlocutory appeal from a trial court ruling that ordered the Attorney General to provide counsel for T. Eric Evans in a civil action initiated by the State alleging that Evans misappropriated public funds while an elected prosecutor for Blackford County, Indiana.

We affirm.

### ISSUE

Whether the trial court erred by determining that the relevant statutes require the Attorney General to provide counsel for Evans.

### FACTS

Evans was the elected prosecutor in Blackford County from November 20, 1992 through December 31, 1998. On February 12, 2002, the Attorney General on behalf of the State of Indiana, filed a complaint against Evans and Western Surety Company to recover public funds "which were found to be misappropriated, diverted or unaccounted for by an examination of the books, accounts and records of the Office of the Prosecutor, Blackford County, Indiana by the State Board of Accounts." (Appellant's App. 8). The audit covered the period from January 1, 1993 through December 31, 1998. In pertinent part, the complaint alleged:

4. T. Eric Evans was an employee of the Office of the Prosecutor, Blackford County, Indiana, during the period of

the loss and had a duty to properly account for and deposit all funds of the Office of the Prosecutor, Blackford County, Indiana which came into his possession and assure that the funds of the Office of the Prosecutor, Blackford County, Indiana were only expended as authorized by law and commit no acts of misfeasance, malfeasance or nonfeasance in management of said funds.

5. That during the audit period, T. Eric Evans, wrongfully or negligently failed to properly account for, expend and deposit the funds of the Office of the Prosecut[or], Blackford County, Indiana or otherwise committed several acts of misfeasance, malfeasance and nonfeasance which acts resulted in the misappropriation, diversion and misapplication of public funds.

6. As a direct and proximate result of the actions of T. Eric Evans, he is indebted to the State of Indiana and the Office of the Prosecutor, Blackford County, Indiana in the amount [of] Sixteen Thousand Two Hundred Eighteen Dollars ($16,218.00).

\*    \*    \*    \*    \*    \*

## COUNT II

\*    \*    \*    \*    \*    \*

10. That Plaintiff, State of Indiana, is a party suffering a pecuniary loss as a result of a violation by Defendant T. Eric Evans, of one or more of the following I.C. 35–43–4–2 [theft], I.C. 35–43–4–3 [criminal conversion] or I.C. 35–43–5–3 [deception], which loss consists of the sum of . . . ($16, 218.00) and Plaintiff is entitled to recovery of treble damages in the amount of . . . ($48,654.00)[ ] plus costs, attorney fees and all other just and proper relief.

11. That Plaintiff, State of Indiana, is a party suffering a pecuniary loss as a result of a breach by Defendant, T. Eric

Evans, of his contract and trust, both real and constructive, . . . and a violation of the resultant trust imposed on him by law and equity to collect, administer, bank and disburse public funds belonging to the State of Indiana and the Office of the Prosecutor, Blackford County, Indiana.

(Appellant's App. 9–10). Count III of the complaint alleged that Western Surety Company was liable in the amount of the bond executed for the faithful performance of duties by employees of the Blackford County Prosecutor's Office in the amount of $15,000.

The audit attached to the complaint stated that Evans "submitted unallowable claims for payment in the amount of $12,985." (Appellant's App. Back of Page 16). The claims "were considered unallowable due to the lack of itemization and duplicate payments made; payment of items (including fixed assets) not on hand in the Prosecutor's office when the current Prosecutor took office on January 1, 1999 and inappropriate and personal-type disbursements." (Appellant's App. 16). The cost of the audit, $3,233, was included within the $16,218 requested in the complaint. Also attached to the complaint, within the audit report, was Evans' 14–page response to the allegations.

On March 5, 2002, acting pro se, Evans moved for an extension of time to answer the complaint noting that, pursuant to statute, he had requested that the Attorney General provide him with counsel. After initially requesting an extension of time, Western Surety, by counsel, filed its answer in April 2002. In its answer, Western Surety, *inter alia*, asserted affirmative defenses, including 1) that the State was estopped to assert claims due to a lack of documentation where the successor to Evans misplaced or disposed of receipts and documentation upon which the losses were

based, and 2) that the State's claims were barred by laches inasmuch as the transactions occurred over a period of time and were not "challenged by the State upon examination" thus allowing "such transactions to continue over time when it had actual and constructive knowledge of the fact that such transactions were taking place." (Appellant's App. 48).

In August 2002, Evans filed with the trial court his formal motion for appointment of counsel invoking Indiana Code § 4-6-2-1.5, Indiana Code § 33-2.1-9-1, and Indiana Code § 34-13-3-15. Evans attached an affidavit in support of his motion. In the affidavit, Evans averred:

> That these claims were all handled and processed in exactly the same manner, as prescribed by law and as directed by the Auditor of Blackford County and the Commissioners of Blackford County.

> That all claims submitted by the affiant were in the ordinary and usual course of business, were advertised as required by law, approved by the Auditor, and approved by the County Commissioners and paid by the Treasurer.

> That each and every act of submitting claims for payment by the affiant was within the scope of the duties of the affiant as Prosecutor, as prescribed and required by law and practice, and done in good faith by the affiant in his capacity as Prosecutor.

(Appellant's App. 63).

After a hearing, the court granted the motion. In pertinent part, the trial court determined:

> 6. [The State] contends there is no statutory duty to appoint counsel for Defendant, pursuant to IC 4-6-2-1, when the State of Indiana is Plaintiff and representing the interests of the State of Indiana.

7. After review of statutes, there is a conflict in the statutes.

8. Pursuant to IC [33-2.1-9-1(b)] . . . .

"the Attorney General shall:

(1) . . . .

(2) authorize the executive Director of the Division of State Court Administration to hire private counsel to provide the defense."

9. The Attorney General should be directed to comply with the statutory procedure set forth in Indiana Code [33-2.1-9-1(b)(2)] within thirty days, giving priority to this case as a consideration in the hiring of private counsel for Defendant Evans.

(Appellant's App. 69-70).

### DECISION

The State contends that the trial court misinterpreted the statutes at issue herein leading to an absurd result: the State is required to provide Evans with counsel, even though the State brought the lawsuit against Evans. We disagree.

Statutory interpretation is a question of law reserved for the court and is reviewed de novo. *Murray v. Conseco, Inc.*, 766 N.E.2d 38, 41 (Ind.Ct.App.2002). De novo review allows us to decide an issue without affording any deference to the trial court's decision. *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind.2000). However, we engage in statutory interpretation only when a statute is ambiguous or susceptible to more than one interpretation. *Id.* If a statute is subject to interpretation, our main objectives are to determine, effect, and implement the intent of the legislature in such a manner so as to prevent absurdity and hardship and to favor public convenience. *Id.; Chavis v. Patton*, 683 N.E.2d 253, 257 (Ind.Ct.App.1997).

When a statute has not been construed previously, its interpretation is controlled

by the express language of the statute and the rules of statutory construction. *Chavis,* 683 N.E.2d at 257. The intent of the legislature as gleaned from the whole prevails over the strict or literal meaning of any word or phrase used within the statute. *Id.* A reviewing court presumes that the legislature intended application of statutory language in a logical manner consistent with the statute's underlying policy and goals. *Id.*

We "presume that the legislature did not enact a useless provision" and that "[w]here statutory provisions are in conflict, no part of a statute should be rendered meaningless but should be reconciled" with the whole. *Id.* (quoting *Rheem Mfg. Co. v. Phelps Heating & Air Cond., Inc.,* 746 N.E.2d 941, 948 (Ind.2001)). Multiple statutes relating to the same general subject matter are considered *in pari materia;* thus, they should be construed together so as to achieve a harmonious result. *Moons v. Keith,* 758 N.E.2d 960, 965 (Ind.Ct.App.2001). Further, "where two statutes cannot be harmonized and the legislature dealt with a subject in a detailed manner in one statute and in a general manner in the other, the detailed statute will supersede the general one." *West Clark Community Schools v. H.L.K.,* 690 N.E.2d 238, 241 (Ind.1997).

The State relies upon two statutes to conclude that the trial court erred. First, the State argues that the court failed to consider the limiting language within Indiana Code § 33–2.1–9–1 wherein an Attorney General is required to provide a prosecuting attorney with counsel in a lawsuit only when the suit arises out of an act performed within the scope of the duties of the prosecuting attorney. Second, the State contends the trial court failed to consider the effects of Indiana Code § 4–6–2–1 requiring the Attorney General to defend state officers in civil actions "except suits brought against them by the state …," and Indiana Code § 4–6–2–1.5 requiring the Attorney General to determine that a suit arose from the official's duties before a defense is required.

Evans argues that the plain language of at least three statutes requires the Attorney General to provide him with counsel for a defense. He contends that Indiana Code § 33–2.1–9–1 requires that the Attorney General provide him with counsel because the allegations within the complaint and his affidavit disclose that the lawsuit stems from acts performed within the scope of his duties as a prosecutor. He urges that Indiana Code § 34–13–3–5, requiring the provision of counsel to a governmental employee "in defense of a claim or suit for a loss occurring because of acts or omissions within the scope of the employee's employment, regardless of whether the employee can or cannot be held personally liable for the loss," would require the Attorney General to provide counsel for a defense in a civil action regardless of the circumstances from which the action stemmed. Further, Evans contends that Indiana Code § 33–14–11–4 requires that the State provide him counsel in the present case.

We turn to the statutes and the parties' analyses. The State contends that the statutes are ambiguous and subject to interpretation. The State's overarching theme is that because it would lead to an absurd result to read the statutes literally, that could not have been the intention of the legislature. Evans urges that the relevant statutes are clear and not subject to interpretation. As such, Evans suggests that even if compelling reasons exist to construe the statutes in another way, we are constrained to apply the unambiguous language. *Cf. Brownsburg Area Patrons v. Baldwin,* 714 N.E.2d 135 (Ind.1999) (if statute unambiguous, courts must apply

plain language despite strong policy or constitutional reasons to construe statute in some other way).

Indiana Code §§ 33–2.1–9–1 through 33–2.1–9–4 provide for the defense of judges and prosecuting attorneys in civil actions. Indiana Code § 33–2.1–9–1(c) provides:

> If a judge or prosecuting attorney is sued for civil damages or equitable relief and the suit would be construed, under notice pleading, as arising out of an act performed within the scope of the duties of the judge or prosecuting attorney, the attorney general shall:
>
> (1) defend the judge or prosecuting attorney in the suit; or
>
> (2) authorize the executive director of the division of state court administration to hire private counsel to provide the defense.

The State and Evans agree, and our research reveals, that the statute has not been interpreted previously. The State argues that the statute provides for two limitations on the duty to defend: 1) the suit must arise out of an act performed within the scope of the prosecutor's duties, and 2) that the determination must be made based upon the pleadings. Thus, according to the State, the determination must be made upon a reading of its complaint without consideration of Evans' affidavit that all matters within the lawsuit arose from the scope of his duties. On its face, the Attorney General's duty to defend is predicated upon a determination that the suit arose from acts within the prosecutor's duties. However, as to the State's second contention, the phrase "under notice pleading" is not synonymous with "the pleadings."

"Notice pleading" has been defined as: "A procedural system requiring that the pleader give only a short and plain statement of the claim showing that the pleader is entitled to relief, and not a complete detailing of all the facts." BLACK'S LAW DICTIONARY 1174 (7th ed.1999). A "pleading" has been defined as: "A formal document in which a party to a legal proceeding (esp. a civil lawsuit) sets forth or responds to allegations, claims, denials, or defenses. In federal civil procedure, the main pleadings are the plaintiff's complaint and the defendant's answer." BLACK'S LAW DICTIONARY 1173 (7th ed.1999).

Given that the determination of whether there exists a duty to defend must be made early in the procedural timeline of a lawsuit, as a practical matter, the only document from which that determination could be made will most often be the complaint. In that sense, the evaluation will be made on the pleadings. However, the statute requires that the determination be made construing the lawsuit under notice pleading, thereby suggesting a broad reading of the available documents in order to make the assessment whether the lawsuit arose from acts performed within the scope of the prosecutor's duties.

It appears that the State urges that we view only the pleadings, thereby disregarding Evans' affidavit, because the affidavit explicitly contains the assertion that the lawsuit arose from acts within the scope of Evans' duties. We disagree with the State's position that the trial court was, and that as the reviewing court we are now, limited to a consideration of the pleadings only. However, we note that information similar to that contained in Evans' affidavit was contained in the complaint filed by the State inasmuch as the State appended to the complaint a copy of the audit with Evans' detailed response explaining that every expenditure was made within the scope of his duties. Also, the State's complaint specifically alleges, *inter alia*, that the lawsuit stems from Evans' duties as a prosecutor, and further

alleges negligence. Western Surety's answer, a pleading, could be read to allege that the lawsuit concerned matters stemming from Evans' prosecutorial duties. Therefore, the State's insistence that the affidavit not be considered is of no moment. The complaint contained allegations that the lawsuit arose from acts performed within the scope of Evans' duties.

Further, the State argues that because the lawsuit alleges alternatively that Evans committed criminal acts, the allegations are necessarily that the acts were not performed within the scope of Evans' duties. Evans contends that two cases are important to the determination of whether the acts or omissions occurred within the scope of his duties as a prosecutor. In *Stropes v. Heritage House Childrens Center,* 547 N.E.2d 244, 247 (Ind.1989), the court addressed the question whether an employer was liable for the wrongful acts of an employee pursuant to the doctrine of respondeat superior because the acts were performed within the scope of employment. The court noted that usually an employer is not responsible for an act committed by an employee if performed on the employee's initiative, "with no intention to perform it as part of or incident to the service for which he is employed." *Id.* (quoting *Gomez v. Adams,* 462 N.E.2d 212, 223 (Ind.App. 1984)). The court explained that an employer could be held liable for such acts, including crimes, if the acts "originated in activities so closely associated with the employment relationship as to fall within its scope." *Stropes,* 547 N.E.2d at 247.

Evans also directs us to *Gomez,* upon which the *Stropes* court relied. Both cases indicate that unauthorized acts, even crimes, can be held to have occurred within the scope of employment. Although the cases hold that the determination whether an act occurred within the scope of employment is a question of fact, the statute in question requires a determination by construing the documents under concepts of notice pleading. On its face, the complaint alleges, *inter alia,* that the lawsuit arose from Evans' dereliction of his duties as a prosecutor. The documentation available to the trial court, and to this court on de novo review, indicates that the lawsuit arose within the scope of Evans' duties.

Moreover, the situation presented here, where the State both brings the action and is required to defend the action, is implicitly addressed by Indiana Code § 33–2.1–9–1. When required to defend a lawsuit against a judge or prosecutor, the Attorney General must either defend the lawsuit *or* "authorize the executive director of the division of state court administration to hire private counsel to provide the defense." I.C. § 33–2.1–9–1(c)(2). That option allows the Attorney General to avoid a potential conflict of interest in both bringing and defending a lawsuit.

Thus, standing alone, Indiana Code § 33–2.1–9–1 appears to require the Attorney General to provide counsel to defend Evans in the lawsuit. Evans would have us leave the inquiry there.

Our rules of statutory construction require us to consider statutes relating to the same general subject matter in a manner that leads to a harmonious result. *See Moons,* 758 N.E.2d at 965 (statutes relating to same general subject matter are considered *in pari materia;* thus, they should be construed together). Here, we must consider Indiana Code § 33–2.1–9–1 in light of Indiana Code §§ 4–6–2–1 and 4–6–2–1.5, Indiana Code § 34–13–3–5, and Indiana Code § 34–14–11–4, all of which embrace aspects of the Attorney General's duty to defend public officials.

Indiana Code § 4–6–2–1 and Indiana Code § 4–6–2–1.5 relate to the powers and

duties of the Attorney General. Indiana Code § 4–6–2–1 provides:

> Such attorney-general shall prosecute and defend all suits that may be instituted by or against the state of Indiana, the prosecution and defense of which is not otherwise provided for by law, whenever he shall have been given ten (10) days' notice of the pendency thereof by the clerk of the court in which such suits are pending, and whenever required by the governor or a majority of the officers of state, in writing, to be furnished him within a reasonable time; and he shall represent the state in all criminal cases in the Supreme Court, *and shall defend all suits brought against the state officers in their official relations, except suits brought against them by the state;* and he shall be required to attend to the interests of the state in all suits, actions or claims in which the state is or may become interested in the Supreme Court of this state.

(Emphasis added).

The State contends that the duty to defend does not exist when the State has brought the lawsuit against the state official requesting the defense. The State argues that because it would be absurd to require the Attorney General to bring a lawsuit against an official and to provide counsel to defend the official in the same proceeding, Indiana Code § 4–6–2–1 eclipses the statutory requirements of Indiana Code § 33–2.1–9–1.

Evans urges that Indiana Code § 4–6–2–1 does not apply to him because he was a county official, not a state official. The State contends that Evans, as a constitutional office holder was a state official. We agree with the State that as generally described in the statute, prosecutors are state officers. *See Mendenhall v. Goldsmith, et al.,* 59 F.3d 685 (7th Cir.1995)

(prosecuting attorneys are state officers within meaning of election statute).

However, pursuant to our rules of construction, specific statutes control over general statutes. *See West Clark,* 690 N.E.2d at 241. The provisions within Indiana Code §§ 33–2.1–9–1 through 33–2.1–9–4 are specifically directed to the duty to provide counsel to defend judges and prosecuting attorneys in civil actions. Accordingly, those provisions control over the more general provisions directed to state officials.

Bolstering his argument that the State must provide him with counsel for a defense, Evans directs us to Indiana Code § 34–13–3–5(e). The statute provides that civil lawsuits stemming from acts by individual governmental employees must be brought against the governmental entity except in certain situations. Also, the statute provides for payment of judgments against individual employees in certain situations, and for the governmental entity to pay for counsel and the costs of defending lawsuits against individual employees. Indiana Code § 34–13–3–5(e) provides:

> The governmental entity shall provide counsel for and pay all costs and fees incurred by or on behalf of an employee in defense of a claim or suit for a loss occurring because of acts or omissions within the scope of the employee's employment, regardless of whether the employee can or cannot be held personally liable for the loss.

Pursuant to the statute, a claimant filing a lawsuit against a governmental employee individually "must allege ... an act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." I.C. § 34–13–3–5(c). While the statute seemingly limits the duty to defend

to those cases where the employee's acts or omissions were within the scope of the employee's employment, the statute states that even if matters are alleged in order to sue and hold personally liable the individual employee, "[t]he governmental entity *shall* provide counsel for and pay all costs and fees incurred by or on behalf of an employee" in defending the lawsuit. I.C. § 34–13–3–5(e) (emphasis added).

The State counters simply that the statute is inapplicable to the present circumstances because the lawsuit must pertain to acts within the scope of the employee's duties. As we discussed above, the documents provided to the court have alleged that the lawsuit stems from acts within the scope of the employee's duties. Thus, the statute is applicable. The statute requires the State to provide counsel for employees of governmental entities whether or not the employees are subject to personal liability. Here, the statute requires that counsel for the defense of Evans be provided.

Evans also directs us to Indiana Code § 33–14–11–4. Indiana Code §§ 33–14–11–1 through 33–14–11–4 provide that the State shall defend and indemnify prosecutors for expenses, including attorney's fees and judgments, in civil actions against the prosecutor.

Indiana Code § 33–14–11–4 states:

The state shall pay the expenses incurred by a prosecuting attorney from a threatened, pending, or completed action or proceeding that arises from:

(1) Making;

(2) Performing; or

(3) Failing to make or perform;

a decision, a duty, an obligation a privilege, or a responsibility of the prosecuting attorney's office.

The chapter defines "expenses" to include:

(1) Reasonable attorney's fees, if the attorney general has authorized the prosecuting attorney to hire private counsel to provide the defense.

(2) A judgment.

(3) A settlement.

(4) Court costs.

(5) Discovery costs.

(6) Expert witness fees.

(7) Any other expense incurred as a result of an action or a proceeding.

I.C. 33–14–11–1. However, the indemnification does not apply when "a threatened, pending, or completed action" results in a criminal conviction or disciplinary proceedings against the prosecutor. I.C. § 33–14–11–3. Here, we do not have any allegation of a criminal conviction or disciplinary proceedings stemming from this lawsuit; although, the complaint on its face suggests the possibility of such.[1] The chapter pertains to providing both a defense and indemnification for prosecuting attorneys in lawsuits. However, the tenor of the statutes, especially the indemnification issues, involve determinations made with the benefit of information not available at the outset of lawsuits. As such, the chapter does not provide the guidance at this stage in the proceedings that exists within Indiana Code §§ 33–2.1–9–1 through 33–2.1–9–4.

We are mindful that we are charged with the duty to construe the individual statutes analyzed here in a harmonious manner to effect the intent of the legislature. *See Moons,* 758 N.E.2d at 965; *West Clark,* 690 N.E.2d at 241. The State's argument that a strict construction

---

1. We note that the State chose to bring this action as a civil matter.

of the statutes, one that requires the Attorney General to provide counsel for Evans, might lead to a facially absurd result in the present case is not without merit. However, the general intent of the legislature favors a finding that the Attorney General must provide Evans with counsel in this civil matter. As noted above, the legislature implicitly addressed the State's chief concern by allowing the Attorney General to "authorize the executive director of the division of state court administration to hire private counsel to provide the defense" to avoid such conflicts of interest when the Attorney General is charged with the obligation to defend a judge or prosecutor. *See* I.C. 33–2.1–9–1(c)(2).

The statutes use absolute terms in requiring the Attorney General to provide counsel when certain conditions are met. Thus, the statutes do not leave much in the way of discretion to the Attorney General in determining which judges or prosecutors for whom to provide representation. Such a scheme removes from the determination concerns regarding arbitrariness and any political and philosophical differences.

The individual statutes involved here are clear in their language and purpose. The only construction required is that in discerning the interplay of the statutes so as to interpret them harmoniously. Accordingly, the trial court did not err in ordering the Attorney General to provide Evans with counsel to present a defense in the present case.

The trial court's order is affirmed.

NAJAM, J., concurs.

VAIDIK, J., dissents with separate opinion.

VAIDIK, Judge, dissenting.

I respectfully dissent from the majority's determination that the Attorney General must provide Evans with counsel for defense of the claims brought against him by the State. One of the central tenets of statutory construction is that we must construe statutes to avoid an absurd result or a result that the legislature, as a reasonable body, could not have intended. *Emergency Physicians of Indianapolis v. Pettit*, 714 N.E.2d 1111, 1114 (Ind.Ct.App. 1999). By requiring the State to pay for the cost of Evans' defense of claims brought by the State, however, the majority reaches a result that surely was not intended by the legislature.

The majority's decision turns on its determination that statutes governing the duty of the Attorney General to defend state officers irreconcilably conflict with the statutes governing the duty of the Attorney General to defend judges and prosecutors. Starting from this premise, the majority concludes that statutes governing the Attorney General's duty to defend judges and prosecutors are the more specific, and thus, controlling statutes. One, though, could just as easily argue that the more specific provision is the one excepting claims filed by the State from those cases for which the Attorney General is required to provide a defense. Ind.Code § 4–6–2–1. However, because I disagree that the two sets of statutes irreconcilably conflict and it is my view that the two sets of statutes can be construed harmoniously, I need not resolve which set of statutes is more specific.

"When two statutes or two sets of statutes are apparently inconsistent in some respects, and yet can be rationalized to give effect to both, then it is our duty to do so. It is only when there is irreconcilable conflict that we can interpret the legislative intent to be that one statute gives way

to the other." *Simmons v. State,* 773 N.E.2d 823, 826 (Ind.Ct.App.2002) (quoting *Wright v. Gettinger,* 428 N.E.2d 1212, 1219 (Ind.1981)). The powers and duties of the Attorney General are defined by statute. *See* Ind.Code § 4–6–2–1 *et seq.* In particular, Indiana Code § 4–6–2–1 requires the Attorney General to defend all suits brought against state officers in their official relations, except suits brought against them by the State. Additionally, Indiana Code § 33–2.1–9–1 requires the Attorney General to either defend a prosecuting attorney who is sued for civil damages arising out of an act performed within the scope of his duties as the prosecuting attorney or authorize the hiring of private counsel to provide such a defense.

These two sets of statutes can be harmonized by reading them to require the Attorney General to defend or provide private counsel for prosecuting attorneys, except where the claim is brought by the State. Such an interpretation would not render Indiana Code § 33–2.1–9–1(c)(2) meaningless because there are instances where the Attorney General would want or need to employ the services of outside counsel other than the conflict of interest situation the majority highlights. For example, the Attorney General may invoke Indiana Code § 33–2.1–9–1(c)(2) when the Attorney General's Office does not have the staffing or resources to adequately defend a claim, during the change of administration, or when the Attorney General is called on to defend two different state officers who have conflicting interests. Because the provisions can be read harmoniously to avoid an absurd result while still giving effect to the language of both provisions, I respectfully dissent.