## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 24 2015, 8:14 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Samuel L. Jacobs
Adam S. Willfond
Jacobs Law LLC
Indianapolis, Indiana

Robert W. Johnson
Johnson Jensen LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Robert W. Hash
Duffin & Hash, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Henry Swanigan,

*Appellant-Plaintiff,*

v.

Founders Insurance Company
and Ronnie Watson,

*Appellees-Defendants*

June 24, 2015

Court of Appeals Case No.
49A04-1408-CT-371

Appeal from the Marion Superior
Court
The Honorable Patrick L. McCarty,
Judge
Cause No. 49D03-1307-CT-28167

**Bailey, Judge.**

# Case Summary

[1] Henry Swanigan ("Swanigan") appeals a grant of summary judgment in favor of Founders Insurance Company ("Founders") on Swanigan's complaint for damages. Swanigan presents the sole issue of whether the trial court properly granted summary judgment to Founders, upon concluding that there was no use of an uninsured vehicle as contemplated by the uninsured motorists ("UIM") endorsement of the automobile policy held by Swanigan ("the Policy"). We affirm.

# Facts and Procedural History

[2] On August 7, 2011, Swanigan exited an Indianapolis CITGO convenience store after making a purchase. Customer Ronnie Watson ("Watson") remained inside the store. Watson's vehicle, with the windows rolled down and Watson's pit bull inside, was parked by a gas pump. As Swanigan crossed the parking lot, Watson's pit bull leaped from Watson's vehicle and attacked Swanigan, causing bodily injury. Watson's vehicle was uninsured. Swanigan's vehicle was insured by Founders.

[3] On July 22, 2013, Swanigan filed a complaint for damages, naming Founders and Watson as defendants. Swanigan moved for partial summary judgment

and Founders filed a cross-motion for summary judgment.[1] On April 7, 2014, the trial court conducted a hearing on the pending motions, at which argument of counsel was heard on the issue of whether Swanigan's damages arose from a "use" of Watson's vehicle. On May 8, 2014, the trial court entered an order denying Swanigan's motion for partial summary judgment and granting Founders' motion for summary judgment. On July 24, 2014, the trial court certified its order for interlocutory appeal. On September 22, 2014, this Court accepted jurisdiction of the appeal.

# Discussion and Decision

## *Summary Judgment Standard of Review*

[4] Pursuant to Rule 56(C) of the Indiana Rules of Trial Procedure, summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. *Shambaugh & Son, Inc. v. Carlisle*, 763 N.E.2d 459, 461 (Ind. 2002). We consider only those facts that the parties designated to the trial court. *Id.* The Court must accept as true those facts alleged by the nonmoving party,

---

[1] Watson did not answer the complaint or participate in trial court proceedings. He is not an active party on appeal.

construe the evidence in favor of the nonmovant, and resolve all doubts against the moving party. *Id.*

[5] A trial court's order on summary judgment is cloaked with a presumption of validity; the party appealing from a grant of summary judgment must bear the burden of persuading this Court that the decision was erroneous. *Indianapolis Downs, LLC v. Herr*, 834 N.E.2d 699, 703 (Ind. Ct. App. 2005), *trans. denied*. Although the appellant bears the burden of persuasion, we will assess the trial court's decision to ensure that the parties were not improperly denied their day in court. *Ind. Health Ctrs., Inc. v. Cardinal Health Sys., Inc.*, 774 N.E.2d 992, 999 (Ind. Ct. App. 2002). The fact that cross-motions are filed does not alter our standard of review. *KPMG, Peak Marwick, LLP v. Carmel Fin. Corp., Inc.*, 784 N.E.2d 1057, 1060 (Ind. Ct. App. 2003).

## *Insurance Contract Standard of Review*

[6] The interpretation of an insurance policy is primarily a question of law for the court, and it is therefore a question that is particularly well suited for summary judgment. *Estate of Sullivan v. Allstate Ins. Co.*, 841 N.E.2d 1220, 1223 (Ind. Ct. App. 2006). Generally, where the terms of a policy are ambiguous, we will construe the ambiguity in favor of the insured. *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 528 (Ind. 2002). Where, as here, the claimant is not a stranger to the policyholder, this construction favoring the policyholder will apply as opposed to neutral construction principles. *Argonaut Ins. Co. v. Jones*, 953 N.E.2d 608, 616 (Ind. Ct. App. 2011), *trans. denied*.

[7] Nonetheless, although ambiguities are construed in favor of the insured, clear and unambiguous policy language will be given its ordinary meaning. *Trisler v. Ind. Ins. Co.*, 575 N.E.2d 1021, 1023 (Ind. Ct. App. 1991). Moreover, the power to interpret contracts does not extend to changing their terms, and insurance policies in this state will not be given an unreasonable construction to provide added coverage. *Id.* An insurer is bound by the plain, ordinary meaning of the words as viewed from the perspective of the insured. *Cincinnati Ins. Co. v. BACT Holdings, Inc.*, 723 N.E.2d 436, 440 (Ind. Ct. App. 2000), *trans. denied*.

[8] Although an insurer has the right to limit their coverage of risks, the limitation is enforceable only if clearly expressed and consistent with public policy. *Stonington Ins. Co. v. Williams*, 922 N.E.2d 660, 669 (Ind. Ct. App. 2010). The purpose of uninsured motorist insurance is to place the insured in substantially the same position he would have been in had the other party complied with the minimum requirements of the insurance statutes. *Argonaut*, 953 N.E.2d at 616. Attempts to limit or diminish uninsured motorist protection required by statute are against public policy. *Id.* However, public policy is not violated unless the policy specifically limits uninsured motorist coverage as to persons who would otherwise qualify as insureds for liability purposes. *Id.* "[I]f a person qualifies as an insured under the liability section of the policy, he must also qualify under the uninsured motorist section or the insurance contract violates public policy." *Smith v. Allstate Ins. Co.*, 681 N.E.2d 220, 222 (Ind. Ct. App. 1997).

## Coverage under the UIM Endorsement

[9] The Policy provides that Founders must pay compensatory damages an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury or property damage caused by an accident. The policy further provides in relevant part: "The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the 'uninsured motor vehicle.'" (App. 19.)

[10] Swanigan argues that he is entitled to compensation under the UIM endorsement because his injuries arose from Watson's "use" of his uninsured vehicle. According to Swanigan, ambiguity must be interpreted against the insurer, an insured would anticipate coverage for animal-related injuries because motorists routinely transport their pets in vehicles, and his injury arose from Watson's negligent use of a vehicle – leaving the windows sufficiently open to allow the dog's escape. Founders argues that Swanigan's damages arose because of Watson's failure to properly restrain his dog, as opposed to a vehicular accident. Directing our attention to *Lumbermens Mut. Ins. Co. v. Statesman Ins. Co.*, 260 Ind. 32, 291 N.E.2d 897, 899 (1973), Founders asserts that damages arise out of the "ownership, maintenance, or use" of a vehicle only when the "efficient and predominating cause of the accident" arises out of the use of the vehicle.

[11] In *Lumbermens*, an insurance policy issued for a delivery truck covered injuries "arising out of the ownership, maintenance or use" of the truck for delivery

purposes. *Id.* Employee Jack Walker drove the truck to a residence to deliver a water softener. When Walker was ascending the homeowner's stairs with the water softener, the stairs collapsed and Walker was injured. Lumbermens, the homeowners' insurer, settled with Walker and sought subrogation from Statesman, which provided insurance on the delivery truck. Lumbermens claimed that Walker was "using" the vehicle when he was injured because loading and unloading was a covered activity under the policy and further claimed that the homeowners were "using" the truck by virtue of their cooperation in the unloading process. Our Indiana Supreme Court disagreed, holding that the trial court had properly granted summary judgment to Statesman:

> The accident did not arise out of the use of the truck. As the trial court pointed out, the proximate cause of the accident was the negligent maintenance of the staircase. The Appellate Court case notes in quoting another case that we are not here dealing with proximate cause but with contract language. However, we are in fact in this instance not dealing with the two parties to the contract. The party claiming to be an insured in this case never paid a penny's premium to the insurer. We are therefore not in a situation where we must construe the contract language any certain way and can seek out the general intent of the contract from a neutral stance.
>
> We are of the opinion that what was intended by the words in the contract, "arising out of the ownership, maintenance or use" of the truck as applied to unnamed insureds is synonymous to being *caused* by use of the truck (including the loading and unloading). Otherwise the insurance company becomes the insurer for every sort of accident by anyone to whom a delivery is made. We are in agreement with the trial court that the "efficient and predominating cause" of the accident must arise out of the use of the vehicle in order for an un-named insured to be covered.

291 N.E.2d at 898-99.

[12] Swanigan acknowledges that *Lumbermens* set forth a narrow construction of the phrase "arising out of the ownership, maintenance, or use," but observes that he is not "an un-named insured" as was the claimant in *Lumbermens*. *See id.* Additionally, Swanigan observes that, even by resort to a narrow application of the term "use," it is not limited to "active driving, operation or direction of a vehicle." (Appellant's Br. at 17.) He directs our attention to a trilogy of cases in which an individual was found to be "using" a vehicle although he or she was physically outside the vehicle: *Argonaut Ins. Co.*, *supra*, *Monroe Guar. Ins. Co. v. Campos*, 582 N.E.2d 865, 870 (Ind. Ct. App. 1991), and *Spencer v. Liberty Mut. Ins. Corp.*, 381 F.Supp.2d 811 (S.D. Ind. 2005).

[13] In *Argonaut*, Deputy Sheriff Sarah Jones had been dispatched to the scene of an automobile accident. 953 N.E.2d at 611. She had positioned her police cruiser to control the flow of vehicles and was directing traffic when she was struck by an oncoming vehicle. On appeal of a summary judgment entered against it, Argonaut contended that Deputy Jones was not entitled to underinsurance coverage because she had not been occupying or using her vehicle at the time her fatal injuries were inflicted. *Id.* at 614.

[14] The *Argonaut* Court discussed *Lumbermens* and its progeny, observing that "the crucial questions to answer in determining coverage issues" were "whether there is an 'active' relationship between the claimant and the vehicle" and "the reasonable expectations of the parties upon entering into the insurance agreement." *Id.* at 619. The Court concluded that Deputy Jones had been "using" her police vehicle:

> [T]he reasonable scope of covered uses of Deputy Jones's patrol car necessarily includes its deployment and use in traffic control situations like the one at issue. Given the nature of the use the parties to the agreement should reasonably have expected, Deputy Jones's activities directing traffic while her patrol car was blocking one of two lanes with its lights activated constituted use of her patrol car within the terms of Argonaut's policy. The trial court therefore properly granted summary judgment to Jones on the issue of use under Argonaut's policy and properly denied summary judgment to Argonaut on this same issue.

*Id.* at 620.

[15]　In *Campos,* a panel of this Court rejected an insurer's contention that "use" was synonymous with "drive" or "operate" and held that an insured was "using" a tow truck although he was not, at the time of injury, occupying it or maintaining physical contact with it. 582 N.E.2d at 870-71. Campos had been dispatched to an intersection where a police officer had detained a driver of a tractor-trailer. Campos entered the police vehicle, consulted with the officer and expressed his intention to return to the tow truck and began the evaluation and removal process. As Campos was exiting the police vehicle, he was struck and severely injured by a vehicle driven by an uninsured motorist. *See id.* at 866. The Court was persuaded that "use" may include that which is related to a primary use:

> The contract between Monroe and Allen Towing provides insurance coverage to Allen Towing and its employees who are engaged in the business of towing disabled vehicles. The parties certainly would have contemplated the nature of this business activity. Removal of disabled vehicles from roadways cannot be accomplished solely by the activity of 'propelling or directing' the towing vehicle. Reasonable persons would expect that a tow truck operator must engage in other activities during the towing process, some of which will require that he exit the vehicle (e.g. evaluation of the towing scene, securing the vehicle to be

towed, attachment of towing equipment to the disabled vehicle, conferring with appropriate officials concerning safety procedures).” *Id.* at 870.

[16] In *Spencer*, the final case of the trilogy discussed by Swanigan, the undisputed facts led the Court to conclude that Spencer, a truck driver who exited his vehicle to render assistance to an injured motorist, “was acting in a manner intended or reasonably within the contemplation of Liberty Mutual and [employer] Starcraft when they contracted for the insurance coverage.” 381 F.Supp2d at 817. The Court concluded that Spencer was “using” his vehicle when he assisted at an accident scene and specifically observed that he was “using” the truck “in a more direct sense” by activating his emergency flashers to alert other traffic. *Id.* at 820. *See also Stonington*, *supra* (a truck driver who had completed his connection and inspection procedure and had touched the door handle in preparation of entering the truck when he was struck by an out-of-control vehicle was, at that time, “using” the truck trailer,[2] in that the “act of getting into the cab of the tractor in order to pull the trailer is incidental to the actual operation of the trailer.”)

[17] Conversely, Founders directs our attention to cases in which the injuries did not arise from a “use” of a vehicle: *Moons v. Keith*, 758 N.E.2d 960 (Ind. 2001) and *Sizemore v. Erie Ins. Exchange*, 789 N.E.2d 1037 (Ind. Ct. App. 2003). The facts underlying the *Moons* decision may be summarized as follows. Randy

---

[2] The trailer was owned by EC Moving, a Wisconsin corporation which was not the driver’s employer.

Williams, whose vehicle was insured by State Farm, was driving with several passengers when he stopped at an intersection in Gary. A passenger in another vehicle fired seventeen shots into Williams's vehicle, injuring the occupants. Williams and one passenger sought coverage for their injuries under a UIM provision of Williams's policy; coverage was denied. During the ensuing litigation, State Farm was granted summary judgment. *See Moons*, 758 N.E.2d at 961.

[18] On appeal from the grant of summary judgment, a panel of this Court reviewed the *Lumbermens* decision and observed: "in order to find coverage, there must be a causal connection or relationship between the vehicle and the injury." *Id.* at 964. The Court determined that the designated facts did not show a requisite causal relationship:

> The only evidence from the designated affidavits indicated the vehicle was merely used to transport Keith to the scene. Keith did not chase Moons and Williams in his car. The shooting was not the result of road rage. The cars did not touch. The facts of this case, as presented to us, do not establish a causal relationship between the vehicle and the injuries sufficient to invoke coverage under the uninsured motorist provision.

[19] *Id.* The Court then clarified that, even where a causal connection exists, "the relationship between the two must not be too remote[.]" *Id.*

[20] Likewise, in *Sizemore*, a panel of this Court affirmed the grant of summary judgment to an insurer who had denied UIM coverage under a policy held by an injured child's mother. In that case, a driver of an uninsured vehicle had transported several boys to play paintball. The boys saw James Sizemore

walking and the driver pulled the vehicle over. Sizemore stuck his head inside the vehicle to talk, one of the paintball guns discharged, and Sizemore was struck in the eye. The trial court found that there was no causal connection between the accident and the use or operation of the uninsured motorist's vehicle. This Court agreed with that conclusion:

> The undisputed facts established that the only connection between the vehicle and the injury was that the vehicle happened to be the physical object against which the safety of the paintball gun may have come in contact. The trial court correctly determined that the efficient and predominating cause of Sizemore's injury did not arise out of the use of the vehicle. The vehicle only remotely contributed to Sizemore's injury by transporting the boys and the paintball equipment to the scene of the incident and by possibly coming into physical contact with the safety of the paintball gun prior to the gun discharging.

*Id.* at 1040. Moreover, the Court agreed with the trial court that the incident leading up to Sizemore's injury was not a "motor vehicle accident" as required by the policy language. *Id.*

[21] According to the designated materials in this case, Swanigan was injured by a pit bull that escaped out the window of a parked car. Watson, the driver of the uninsured vehicle, was at that time inside the convenience store. He returned to his vehicle after Swanigan had been bitten and knocked down. Thus, neither of the drivers nor the dog was inside or in physical contact with a vehicle at the time of attack. According to *Campos*, use is not limited to physical occupancy of a vehicle. 582 N.E.2d at 870. However, consistent with *Lumbermens* and its progeny, there must be a causal connection or relationship between the vehicle and the injury. *See Moons*, 758 N.E.2d at 964.

[22] We, like the panels of this Court in *Moons* and *Sizemore*, do not find the mere vehicular transport of the injurious entity to be a sufficient causal connection. Beyond Watson's transport of his pit bull, it may well be that he rolled down the window of his vehicle before exiting at the convenience store, in order to make the dog more comfortable.[3] Even so, accommodating an animal left alone and unrestrained is not an integral use of the vehicle as would be within "the reasonable expectation of the parties upon entering into the insurance contract." *Argonaut*, 582 N.E.2d at 619. Watson was not "using" his uninsured vehicle at the time his unrestrained dog traversed the CITGO parking lot and injured a customer.[4]

# Conclusion

[23] Watson was not "using" his uninsured vehicle when Swanigan was injured. Accordingly, the trial court properly granted summary judgment to Founders upon Swanigan's complaint for uninsured motorist coverage.

---

[3] We have no affidavit from Watson to this effect. *Compare*: *Hughley v. State*, 15 N.E.3d 1000, 1004-5 (Ind. 2014) (when a party has by designated evidence – although it be minimal – raised a genuine factual issue to be resolved at trial, the trial court will not weigh the evidence and a summary judgment motion will be defeated).

[4] Swanigan has cited to cases from other jurisdictions in which coverage was found to exist for injuries caused by an animal. The Court in *Trampf v. Prudential Prop. & Cas. Co.,* 199 Wis.2d 380, 389, 544 N.W.2d 596, 600 (Wisc. Ct. App. 1996) applied a standard of "whether a particular incident falls within an expected use of a vehicle" and found that transporting dogs in the bed of a vehicle is such a use. In *Farmer's Ins. Co. of Ariz. v. Till*, 170 Ariz. 429, 432, 825 P.2d 954, 957 (Ariz. Ct. App. 1991), the Court found a dog owner had used the "inherent design of the pickup/camper to separate her passenger from her potentially dangerous cargo." We observe that the courts were not constrained to follow the narrow definition of "use" adopted in Indiana and, moreover, the animals were inside or tethered to the vehicles.

Affirmed.

Riley, J., and Barnes, J., concur.